**IN RE D.R.F.**

[204 N.C. App. 138 (2010)]

IN THE MATTER OF: D.R.F., A MINOR CHILD

No. COA09-1716

(Filed 18 May 2010)

### 1. Appeal and Error— termination of parental rights—failure to appeal from adjudication order

Respondents' argument that the trial court erred in terminating their parental rights to their minor child based upon neglect was not properly preserved for appellate review. Because respondents only appealed from the dispositional order, the adjudication order in which the minor child was adjudicated neglected remained valid and final.

### 2. Termination of Parental Rights— disposition—best interests of the child—no abuse of discretion

The trial court did not abuse its discretion in a termination of parental rights case by ordering the minor child be adopted by the child's foster parents instead of placing the child in kinship placement. The trial court made findings of fact concerning the statutory factors in N.C.G.S. § 7B-1110(a) and clearly considered the child's best interests.

### 3. Appeal and Error— preservation of issues—failure to make a motion to recuse trial judge

Respondent-father failed to preserve for appellate review his argument that the trial judge in a termination of parental rights case erred by failing to recuse himself from the termination of parental rights hearing after having recused himself from a permanency planning hearing in the same case. The trial judge was not required to recuse himself *sua sponte* and respondent failed to move for the trial judge's recusal when the trial judge presided over the adjudication and disposition hearings.

Appeal by respondents from an order entered 1 October 2009 by Judge J. Carlton Cole in Chowan County District Court. Heard in the Court of Appeals 26 April 2010.

*W. Hackney High, Jr., for Chowan County Department of Social Services, petitioner-appellee.*

*N.C. Administrative Office of the Courts, by Appellate Counsel Pamela Newell, for Guardian ad Litem.*

**IN RE D.R.F.**

[204 N.C. App. 138 (2010)]

*Peter Wood, for respondent-appellant mother.*

*Jeffrey L. Miller, for respondent-appellant father.*

JACKSON, Judge.

Both respondent-father and respondent-mother ("respondents") appeal the 1 October 2009 order terminating their parental rights to the minor child, D.R.F. For the reasons stated herein, we affirm.

Respondents are the natural parents of D.R.F., who was born in September 2007. When D.R.F. was born, the Chowan County Department of Social Services ("DSS") already had custody of respondent-mother's three older children, and respondent-father was in jail on three counts of child abuse based upon his interactions with respondent-mother's other children. DSS took custody of D.R.F. on 6 November 2007 after respondent-mother violated orders prohibiting her from having any contact with respondent-father and from allowing her children to have any contact with him. On 7 November 2007, D.R.F. was placed with a licensed foster care family ("foster parents") with whom she continues to reside. Following a hearing on 19 December 2007, the trial court adjudicated D.R.F. a neglected juvenile and ordered, *inter alia*, that DSS remain responsible for the care and placement of D.R.F., that respondents be allowed supervised visits with D.R.F. at the discretion of DSS, and that respondents comply with the requirements of their case plans.

At both the 19 December 2007 and 19 March 2008 hearings, respondents were ordered to provide information as to relatives who may be able to care for D.R.F., but neither respondent could suggest an appropriate placement. At a 2 September 2008 meeting, almost ten months after D.R.F. was taken into DSS custody, respondents first informed DSS that respondent-father's aunt and her husband ("paternal relatives") were willing to be considered as a placement for D.R.F. The paternal relatives were unaware of D.R.F.'s being in foster care until September 2008. Beginning on 11 October 2008, D.R.F. had regular visits with her paternal relatives. A kinship assessment of the paternal relatives revealed "no issues or concerns."

On 21 October 2008, based upon a permanency planning hearing held on 3 September 2008, the trial court ordered concurrent plans of reunification of D.R.F. with respondents and guardianship with a relative or adoption. Following another permanency planning hearing, the trial court entered a 5 November 2008 order "reliev[ing] [DSS] of its duty to use reasonable efforts to prevent the need for the place-

IN RE D.R.F.

[204 N.C. App. 138 (2010)]

ment of [D.R.F.]" and requiring DSS to "work[] towards the permanent plan of guardianship with a relative or adoption." On 20 November 2008, the trial judge recused himself from the permanency planning hearing scheduled for 17 December 2008, but the reason for the recusal is not set forth in the record before us. Another trial judge presided over the 17 December 2008 and 13 January 2009 permanency planning hearings and ordered, *inter alia,* that the permanent plan for D.R.F. be adoption by her foster parents, that DSS proceed with filing an action to terminate respondents' parental rights, and that the paternal relatives continue to have a minimum of four hours of visitation with D.R.F. each month.

On 13 March 2009, DSS filed a motion to terminate respondents' parental rights. At the 18 June 2009 adjudication hearing, both respondents, through counsel, stipulated to a finding of past neglect. In a 7 August 2009 adjudication order, the trial court found that grounds existed for termination based upon respondents' stipulation, testimony from the social worker, and prior court orders. During several dispositional hearings, the trial court heard evidence as to the appropriateness of placement with the paternal relatives as compared to adoption by the foster parents, including the recommendation of D.R.F.'s guardian *ad litem* ("GAL") that "it is still in the best interest of the child that she be placed with the relatives (aunt and uncle)." In a 1 October 2009 order, the trial court found, *inter alia,* that "it is in [D.R.F.'s] best interest to be adopted by the foster family" and granted DSS's motion for termination of respondents' parental rights. The trial judge who previously had recused himself from a permanency planning hearing presided over both the adjudication and disposition hearings. Respondents appeal the 1 October 2009 order.

Initially, we note that respondent-mother and respondent-father filed separate briefs to this Court. However, two of their arguments—the sufficiency of the trial court's findings as to neglect and the trial court's potential abuse of discretion in preferring adoption by the foster parents to placement with the paternal relatives—coincide. The final argument discussed herein—whether the trial judge erred in failing to recuse himself from the termination of parental rights hearing—is raised only by respondent-father.

[1] Respondents first contend that the trial court's termination of their parental rights based upon neglect was erroneous, because the stipulation was not sufficient to support a finding of neglect and the trial court made no finding as to the likelihood of repetition of

neglect. Because respondents did not appeal the 7 August 2009 adjudication order, we do not address this argument.

"[Rule 3(d) of the North Carolina Rules of Appellate Procedure] requires that a notice of appeal designate the order from which appeal is taken." *In re A.L.A.*, 175 N.C. App. 780, 782, 625 S.E.2d 589, 590-91 (2006). An order remains final and valid when no appeal is taken from it. *In re Wheeler*, 87 N.C. App. 189, 194, 360 S.E.2d 458, 461 (1987). In an unpublished opinion, which is not binding on this Court but which we find persuasive, application of these principles required us to decline to review an adjudication order from which respondent-mother had failed to appeal. *In re D.D.*, 182 N.C. App. 765, 643 S.E.2d 83, 2007 WL 1119687 (unpublished). *See Kelly v. Kelly*, 167 N.C. App. 437, 443, 606 S.E.2d 364, 369 (2004).

In the case *sub judice*, respondents appeal only the 1 October 2009 disposition order, according to their respective notices of appeal. Therefore, the 7 August 2009 adjudication order remains valid and final, and we do not address respondents' alleged errors as to that order.

[2] Second, respondents argue that the trial court abused its discretion when it preferred adoption by D.R.F.'s foster parents, who have cared for her since 7 November 2007, over a kinship placement. We disagree.

A termination of parental rights proceeding is held in two phases, the adjudication stage and the disposition stage. *In re Mills*, 152 N.C. App. 1, 6, 567 S.E.2d 166, 169 (2002). Once a trial court has concluded during the adjudication phase that grounds exist for termination of parental rights, it must decide in the disposition phase whether termination is in the best interests of the child. *Id.* at 7, 567 S.E.2d at 169-70. The trial court's decision as to the best interests of the child is discretionary. *Id.* at 7, 567 S.E.2d at 170. "A ruling committed to a trial court's discretion is to be accorded great deference and will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

North Carolina General Statutes, section 7B-1110(a) provides six factors that trial courts must consider when making a determination as to a child's best interest:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2007). The General Assembly also has set forth its intent with respect to the State's termination of parental rights statutes, which includes, *inter alia*:

(2) It is the further purpose of this Article to recognize the necessity for any juvenile to have a permanent plan of care at the earliest possible age, while at the same time recognizing the need to protect all juveniles from the unnecessary severance of a relationship with biological or legal parents.

(3) Action which is in the best interests of the juvenile should be taken in all cases where the interests of the juvenile and those of the juvenile's parents or other persons are in conflict.

N.C. Gen. Stat. § 7B-1100 (2007).

In the instant case, the trial court made findings of fact that mirror the statutory considerations. In its 1 October 2009 order, it found, *inter alia*:

7. The juvenile was approximately six weeks old when [DSS] assumed custody of the juvenile and was approximately 22 months old at the time of the August 29, 2009 hearing in this matter.

. . . .

19. The juvenile is now almost two years old and at that age is likely to be adopted.

20. The [] foster parents have long expressed a willingness and strong desire to adopt the juvenile and as such there is a high likelihood the juvenile will be adopted.

21. The adoption of the juvenile by the [foster parents] will accomplish the goal of the permanent plan for the juvenile.

. . . .

IN RE D.R.F.

[204 N.C. App. 138 (2010)]

23. The bond between the juvenile and the [] foster parents, as proposed adoptive parents, is strong.

24. There is little bond between the juvenile and the juvenile's parents to the extent that such bond is practically non-existent.

. . . .

33. Since November 7, 2007 the [] foster parents have provided the juvenile with a safe, loving, caring and stable home.

In addition to these findings that address the relevant factors in North Carolina General Statutes, section 7B-1110(a), the trial court made extensive findings as to the relative situations of the foster parents and D.R.F.'s paternal relatives. It also specifically provided its reasons for determining that D.R.F.'s best interests would be served by termination of parental rights and subsequent adoption by her foster parents:

56. The [c]ourt's primary concern is a safe permanent home for the juvenile within a reasonable amount of time and the [paternal relatives], although currently able to provide the juvenile a proper home, were unable to provide the juvenile a safe permanent home within a reasonable time after the juvenile was taken into custody due to circumstances not within the control of the [paternal relatives] but due to circumstances which were within the control of the [respondents].

57. That if the [paternal relatives] were ordered to have placement of the juvenile the [paternal relatives] would view their role as caretakers of the juvenile until such time that the parents were living their lives in a way and manner such that the [c]ourt would return placement to the parents, whereas the [c]ourt is looking for a plan that would be more permanent for the juvenile.

58. The [c]ourt is aware of policy and statutory provisions regarding relative placement priority of juveniles and is of the opinion that the [] foster parents provided the juvenile with a safe permanent home within a reasonable time and that no relatives presented themselves to the [c]ourt or [DSS] in a reasonable time to provide the juvenile a safe permanent home.

Based upon these findings of fact, in addition to the numerous others within the order, the trial court clearly considered the best interests of D.R.F. thoroughly, and we cannot say that its decision to terminate respondents' parental rights "was so arbitrary that it could not have

**IN RE D.R.F.**

[204 N.C. App. 138 (2010)]

been the result of a reasoned decision." *White*, 312 N.C. at 777, 324 S.E.2d at 833.

**[3]** Respondent-father's final argument is that the trial judge erred by failing to recuse himself from the termination of parental rights hearing after having recused himself from a permanency planning hearing in the same case. We disagree.

The North Carolina Code of Judicial Conduct sets forth instances in which a party's motion for recusal of a judge should be granted. Code of Judicial Conduct Canon 3(C), 2010 Ann. R. N.C. 518-19.[1] It then notes that "[n]othing in this Canon shall preclude a judge from disqualifying himself/herself from participating in any proceeding upon the judge's own initiative." Code of Judicial Conduct Canon 3(D), 2010 Ann. R. N.C. 519. "While this provision certainly encourages a judge to recuse himself or herself in cases where his or her 'impartiality may reasonably be questioned' upon their [sic] own motion, they [sic] are not required to do so in the absence of a motion by a party." *In re Key*, 182 N.C. App. 714, 719, 643 S.E.2d 452, 456 (2007) (quoting Code of Judicial Conduct Canon 3, 2007 Ann. R. N.C. 446).

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion[.]" N.C. R. App. P. 10(a)(1) (2009). When a party does not move for a judge's recusal at trial, the issue is not preserved for our review. *In re Key*, 182 N.C. App. at 719, 643 S.E.2d at 456 (citing *State v. Love*, 177 N.C. App. 614, 627-28, 630 S.E.2d 234, 243 (2006)).

Here, the trial judge offered no reason for his original recusal but simply decreed as part of the 20 November 2008 order, "Upon his own motion, [the trial judge] recuse[s] himself from the hearing on the permanent plan scheduled for December 17, 2008." Respondent-father concedes that when the same trial judge later presided over both the adjudication and disposition hearings in this case, he did not move for recusal. Respondent-father contends that we should consider this alleged error one "which by rule or law was deemed preserved . . . ." N.C. R. App. P. 10(a)(1) (2009). We decline to treat this situation as one in which preservation is automatic. Because the trial judge has no duty to recuse himself *sua sponte*, because we have no indication of the reasons underlying this trial judge's initial recusal or

---

1. Canon 3 was amended last in 2006. Therefore, the 2010 version of the North Carolina Code of Judicial Conduct reflects the same principles that were applicable during the proceedings at issue here.

whether those reasons continued to exist, and most importantly, because this issue was not preserved for our review, we hold that the trial judge did not err by failing to recuse himself from the adjudication and disposition hearings in this case.

For these reasons, we hold that respondents' arguments as to the 7 August 2009 adjudication order were not preserved. We also hold that the trial court did not abuse its discretion in preferring adoption by the foster parents to placement with the paternal relatives nor did the trial judge err in presiding over the termination of parental rights hearing after he had recused himself from an earlier proceeding.

Affirmed.

Chief Judge MARTIN and Judge BEASLEY concur.