INMAN, Judge.
Respondent-mother appeals from the trial court's order terminating her parental rights to N.A.F. ("Nancy").[1] After careful review, we affirm.
Background
Nancy was born in Philadelphia in November 2009. In September 2010, respondent-mother traveled to High Point and left Nancy with "Ken Maples." Respondent-mother asked Mr. Maples to watch Nancy for a few weeks and advised him that he was Nancy's father. Despite telling Mr. Maples that she would pick up Nancy in a few weeks, respondent-mother never returned.
In December 2011, the Guilford County Department of Social Services ("DSS") opened an investigation after receiving a report that Mr. Maples had neglected Nancy. The investigation revealed that Nancy had not received immunizations since she was nine months old; that Mr. Maples did have not have authorization to consent for medical or other services for Nancy; that Nancy was left in a playpen for long periods of time; that Mr. Maples used marijuana; that the home did not have adequate food or heat; and that Mr. Maples was not employed. Mr. Maples did not know respondent-mother's whereabouts or how to contact her. He advised DSS that she was a heavy drug user and moved around a lot. Nonetheless, DSS began making attempts to locate respondent-mother. On 1 February 2012, Mr. Maples submitted to DNA testing and was excluded as Nancy's father.
On or about 9 August 2012, DSS obtained nonsecure custody of Nancy and filed a juvenile petition alleging that she was neglected and dependent, shortly after locating respondent-mother. DSS learned that respondent-mother was disabled, was a ward of the Baltimore City Department of Social Services, and was residing in a nursing home in Baltimore. Respondent-mother's disabilities were the result of a stroke and brain infection that she suffered in November 2011. DSS also identified Nancy's putative father, but was unable to locate him. The putative father, however, was believed to have sexually abused a child and was ordered not to have contact with Nancy. In an order entered on 20 May 2013, the trial court concluded that Nancy was neglected and dependent, based on respondent-mother's consent, through her guardian ad litem and attorney. In the dispositional portion of the order, the trial court concluded that it was in Nancy's best interest to remain in DSS custody.
On 29 July 2013, DSS filed a motion to terminate respondent-mother's rights to Nancy based on the following grounds: neglect; dependency; and willful abandonment. SeeN.C. Gen.Stat. § 7B-1111(a)(1), (6), (7) (2013). Following a hearing, the trial court entered an order in which it found the existence of neglect and dependency as grounds for termination. The trial court dismissed the willful abandonment ground. The trial court then concluded that termination of respondent-mother's parental rights was in Nancy's best interest. The trial court also terminated the parental rights of Nancy's putative father, but he does not appeal. Respondent-mother appeals.
Discussion
On appeal, respondent-mother argues that the trial court committed reversible error by deciding to terminate her parental rights prior to hearing any evidence. At the outset of the termination hearing, the parties discussed several pretrial matters, including facts to which both parties could stipulate. During this discussion, respondent-mother proposed that Nancy could live with her in an assisted living facility, if and when she was released from the nursing home. The judge questioned whether Nancy could realistically live with respondent-mother in an assisted living facility. The judge also, on several occasions, questioned respondent-mother's basis for challenging the termination of parental rights petition, given that it was undisputed she had been declared incompetent. Respondent-mother contends that these comments evidence the trial court's lack of impartiality and require reversal. We are not persuaded.
In making her argument, respondent-mother invokes notions of due process and cites to caselaw involving judicial misconduct. However, her argument is misplaced. At essence, respondent-mother contends that the trial judge violated her duty of impartiality in her comments at the outset of the hearing. "[A] party has a right to be tried before a judge whose impartiality cannot reasonably be questioned." State v. Fie,320 N.C. 626, 627, 359 S.E.2d 774, 775 (1987). The North Carolina Code of Judicial Conduct governs a judge's duty of impartiality and grounds for disqualification. Canon 3(C) sets forth a non-inclusive list of grounds for recusal, and provides in pertinent part, the following:
(1) On motion of any party, a judge should disqualify himself/herself in a proceeding in which the judge's impartiality may reasonably be questioned, including but not limited to instances where:
(a) The judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings[.]
Code of Judicial Conduct Canon 3(C), 2015 Ann. R. N.C. 508. "The burden is on the party moving for recusal to demonstrate objectively that grounds for disqualification actually exist." State v. Kennedy,110 N.C.App. 302, 305, 429 S.E.2d 449, 451 (1993). "The 'bias, prejudice or interest' which requires a trial judge to be recused from a trial has reference to the personal disposition or mental attitude of the trial judge, either favorable or unfavorable, toward a party to the action before him." Id.
While a party can move for recusal, a judge may also disqualify herself sua sponte.The Code states that "[n]othing in this Canon shall preclude a judge from disqualifying [ ]herself from participating in any proceeding upon the judge's own initiative." Code of Judicial Conduct Canon 3(D), 2015 Ann. R. N.C. 509. "While this provision certainly encourages a judge to recuse [ ] herself in cases where [ ] her 'impartiality may reasonably be questioned' upon [her] own motion, [she is] not required to do so in the absence of a motion by a party." In re Key,182 N.C.App. 714, 719, 643 S.E.2d 452, 456 (2007) (quoting Code of Judicial Conduct Canon 3, 2007 Ann. R. N.C. 446).
Thus, because a judge is not required to recuse herself sua sponte,failure to recuse is not error automatically preserved by N.C. R.App. P. 10(a)(1). See Cox v. Cox,--- N.C.App. ----, ----, 768 S.E.2d 308, 317 (2014) ; Sood v. Sood,--- N.C.App. ----, ----, 732 S.E.2d 603, 608 (2012) ; In re D.R.F.,204 N.C.App. 138, 145, 693 S.E.2d 235, 240 (2010). We have specifically stated that "[w]here [an] appellant failed to move that the trial judge recuse himself, he cannot later raise on appeal the judge's alleged bias based on an undesired outcome." Sood,--- N.C.App. at ----, 732 S.E.2d at 608 ; see also D.R.F.,204 N.C.App. at 144, 693 S.E.2d at 240 ("When a party does not move for a judge's recusal at trial, the issue is not preserved for our review.") (citation omitted).
Here, respondent-mother essentially claims that the trial judge showed a bias against her. As explained above, respondent-mother's claim should have been brought in a motion for recusal before the trial court. Because respondent-mother did not move for recusal at the termination hearing, this issue is not preserved on appeal. See Cox,--- N.C.App. at ----, 768 S.E.2d at 316-17 ; Sood,--- N.C.App. at ----, 732 S.E.2d at 607-08 ; D.R.F.,204 N.C.App. at 144, 693 S.E.2d at 240. Accordingly, we must dismiss respondent-mother's argument.
Moreover, respondent-mother would be unable to show that she suffered any prejudice. After reviewing the record, we conclude that the trial court's findings of fact are sufficient to support at least one ground for termination. Pursuant to N.C. Gen.Stat. § 7B-1111(a), a trial court may terminate parental rights upon a finding of one of eleven enumerated grounds. If this Court determines that the findings of fact support one ground for termination, we need not review the other challenged grounds. In re Humphrey,156 N.C.App. 533, 540, 577 S.E.2d 421, 426 (2003). Here, the findings support dependency as a ground for termination, which our juvenile code defines as follows:
[T]he parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
N.C. Gen.Stat. § 7B-1111(a)(6) (2013). In determining whether a juvenile is dependent, the trial court is required to "address both[:] (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." In re P.M.,169 N.C.App. 423, 427, 610 S.E.2d 403, 406 (2005).
Respondent-mother argues that the trial court's bias is reflected in its order. She contends that the trial court "could not get beyond mother's finding of incompetence or her residence in an assisted living facility" and that "[t]his attitude is reflected throughout the findings of fact in the termination order." Thus, respondent-mother argues, the trial court failed to address the likelihood that respondent-mother's condition would continue for the foreseeable future. We are not persuaded.
Finding of fact number 34 specifically addresses dependency as a ground for termination:
34. The mother is incapable of providing for the proper care and supervision of the juvenile based upon a cause or condition that renders her unable to parent the juvenile, such that the juvenile is dependent juvenile within the meaning of N.C.G.S. § 7B-101, there is a reasonable probability that such incapability will continue for the foreseeable future, and the mother lacks an appropriate alternative child care arrangement.
a. The mother has substantial mental health issues, including but not limited to Schizophrenia, Bipolar Disorder, and Depression. The mother also has substantial physical limitations resulting from the stroke and brain infection she sustained in November 2011. Although the mother's mental health issues have improved to some degree with psychotropic medications, she still has mood and emotional fluctuations that are severe enough to interfere with her physical rehabilitation. Although the mother has had improvements in her physical condition such that in three and a half years she has gone from being unable to move at all to being mobile in a wheelchair, being able to stand for short periods with assistance, and being able to walk a short distance with a walker, the mother is still not able to dress herself completely and do her hair without assistance, she is still confined to a wheelchair, and she is unable to provide for her own basic physical needs. The mother's best possible option for at least the next two years is to advance from a nursing home to an assisted living facility where she would still have around the clock caretakers and attend adult daycare. The mother's mental health issues and physical limitations render her incapable of providing for the proper care and supervision of the juvenile and there is a reasonable likelihood that those conditions will continue for the foreseeable future.
b. The mother lacks an appropriate alternative child care arrangement. The mother proposed her brother ["Hank"] who lives in North Carolina, her brother ["Calvin"] who lives in Philadelphia, Pennsylvania, a woman by the name of ["Mary"], and ["Lenny"]. The mother proposed her brothers for placement in April 2013 and provided telephone numbers for each of them. Social Worker Hurley called both of the brothers. The Social Worker was unable to get through to [Hank] because his telephone number did not receive incoming calls. The Social Worker called and spoke with [Calvin] at length. [Calvin] was most cooperative, providing some family history and sending the Social Worker some photographs of the family for the juvenile's life book. However, [Calvin] reported that he was not in a position to accept placement of the juvenile. At the Social Worker's request, [Calvin] agreed to contact his brother [Hank] and ask [Hank] to call the Social Worker to explore possible placement of the juvenile. The Social Worker never heard from [Hank]. After the Petition to Terminate Parental Rights was filed, the mother requested that her sister [Mary] be considered as an alternative placement for the juvenile. With the assistance of Baltimore City Social Worker Sharon Powdrill, [Mary] was located and Social Worker Sandra Hurley was able to speak with her by telephone. When Social Worker Hurley requested that [Mary] provide information that the Social Worker could use to verify that [Mary] was in fact the mother's sister, such as the name of her father, [Mary] became uncooperative and defensive. As an alternative to providing the name of her father, the Social Worker proposed that [Mary] submit to a DNA test so that a biological relation to the mother could be established. [Mary] would not agree to submit to a DNA test and stopped communicating with the Social Worker altogether. During this trial, the mother said she admitted that [Mary] was not her sister. During this trial, the mother said she wanted the juvenile placed with [Lenny], who is [the putative father's] uncle. [Lenny] has extensive and continuous contact with [the putative father]. [Lenny] also neglected the juvenile while he was her joint legal custodian as evidenced by the adjudication. None of the alternative placements proposed by the mother were viable or appropriate for the juvenile.
We review the trial court's order to determine "whether the trial court's findings of fact were based on clear, cogent, and convincing evidence, and whether those findings of fact support a conclusion that parental termination should occur[.]" In re Oghenekevebe,123 N.C.App. 434, 435-36, 473 S.E.2d 393, 395 (1996) (citation omitted). Respondent-mother has failed to specifically challenge this finding as lacking in evidentiary support. Therefore, it is presumed to be supported by competent evidence and is binding on appeal. See In re M.D.,200 N.C.App. 35, 43, 682 S.E.2d 780, 785 (2009).
In this finding, the trial court thoroughly addressed each prong of the dependency ground, and the factual findings are supported by ample evidence in the record. Additionally, the specific factual findings in subpart (a) directly contradict respondent-mother's argument. In subpart (a), the trial court made findings that clearly reflect consideration of respondent-mother's recent progress. Nonetheless, as the trial court found, respondent-mother's limitations would still render her incapable of caring for Nancy for the foreseeable future. It was well within the trial court's prerogative to weigh the evidence and make this determination. See In re Hughes,74 N.C.App. 751, 759, 330 S.E.2d 213, 218 (1985) ("The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject.").
On a final note, we find it telling that the trial court dismissed willful abandonment as a ground for termination. The dismissal of this ground serves as further proof that the trial court gave consideration to respondent-mother's current condition and that its decision was not rooted in the events that occurred early on in the juvenile action.
Conclusion
We hold that the trial court's conclusion that termination of respondent-mother's rights was justified based on the ground of dependency was free from error. Accordingly, we affirm the order of the trial court.
AFFIRMED.
Judges ELMORE and TYSON concur.
Report per Rule 30(e).
Opinion
Appeal by respondent-mother from order entered 4 September 2014 by Judge Angela C. Foster in Guilford County District Court. Heard in the Court of Appeals 18 May 2015.

Pseudonyms are used throughout this opinion to protect the identity of the juvenile and for ease of reading.