CALABRIA, Judge.
Respondent-father and respondent-mother (collectively "respondents") appeal from orders eliminating reunification from the permanent plan, relieving the Cherokee County Department of Social Services ("DSS") of further efforts toward reunification, and terminating respondents' parental rights as to the minor children "Taylor," "Hannah," and "Alexander."[1] We vacate the orders and remand for further proceedings.
I. Factual and Procedural Background
Respondents are not married but have seven children together. Their first two children were born in 2006 and 2008, entered DSS custody after testing positive for illicit drugs, and were later surrendered by respondents for adoption.
Taylor, Hannah, and Alexander ("the children") are respondents' third, fourth, and fifth children and were born, respectively, in 2009, 2011, and 2014. DSS obtained non-secure custody of the children on 20 January 2015 and filed juvenile petitions alleging they were neglected. The petitions described the children as filthy and living in squalid conditions without heat in the home and accused respondents of attempting to conceal their living arrangements from DSS. DSS further alleged that Taylor had not been to school since before the Christmas holiday and had disclosed to the social worker that respondent-father hit her with his fist "when she got in trouble." During an interview with the social worker, respondent-mother acknowledged she had used methamphetamine in respondent-father's presence that day; that the children's paternal grandmother, Ms. W., had allowed respondent-mother to watch the children despite knowing that she had used methamphetamine; that she had left the children with Ms. W. for four days the last time she used methamphetamine; and that Taylor was sick and had not been to the doctor. Respondent-father denied knowledge of respondent-mother's drug use and denied using illegal drugs himself.
DSS filed amended petitions on 17 February 2015 seeking additional adjudications of abuse as to Taylor and Hannah. After repeating the original allegations, the petitions reported two disclosures by five-year-old Taylor to her foster parents. First, Taylor pointed out two injuries on Hannah, "a large bruise cover[ing] the top of her foot" and an open wound on her palm, which Taylor said were inflicted by respondent-father. Two days later, Taylor made her second disclosure, recounted by her foster mother as follows:
[Taylor] says "mommy told me not to tell you about the movie". I ask her do you want to tell me about the movie? [S]he says "yes. It's mine and mommy[']s favorite movie. The one where the man takes all his clothes off and the lady takes all her clothes off and then they get married[.]" I ask her what she means and she says "they get on top of each other and do stuff[.]" I said ok thank you for telling me .... She then asks me "want to know why I watch that movie" I say yes, tell me. She then says "so I can marry daddy's friend. The one who gives him needles[.]" I ask her okay do you know his name? She says "no I don't know him but his house is in the woods and he said I could be a hero if I married him so I did but I didn't want to. It didn't hurt so bad because I am strong[.]" ...
According to the foster mother, Taylor subsequently "reported incidents of specific sex acts with another adult male involving [her] putting her mouth on his 'goober' and his 'goober' in her (bad place) as well as his mouth o[n] her 'woohoo' un[til] it felt good so she 'marries' him again and again."
Based on these statements, Taylor and Hannah were referred to Bethany Stalcup for forensic evaluations. At Ms. Stalcup's recommendation, DSS moved the trial court to suspend respondents' visitation with the children pending completion of their evaluations. The court suspended respondent-father's visitation with the two girls on 12 February 2015. By consent order signed 23 April 2015, respondent-father was granted one hour per week of supervised visitation with the children.
On 11 May 2015, respondent-father and DSS signed a "Stipulated Memorandum of Judgment" ("Stipulated Memorandum") purporting to "consent to the [children] being adjudicated neglected as they lived in an environment injurious to [sic] their welfare and that there was improper supervision in regards to the minor children." At the time the Stipulated Memorandum was executed, respondent-mother was hospitalized pursuant to an involuntary commitment. Neither she nor her counsel signed the document; nor did the children's guardian ad litem . The following day, 12 May 2015,[2] the trial court entered a "Stipulated Order Adjudication Hearing" ("Adjudication Order") adjudicating the children neglected juveniles based on "the stipulations and agreements [of] the parties" as set forth in the Stipulated Memorandum. With regard to the children's status as neglected, the Adjudication Order states only as follows: "The juveniles and each of them, are hereby adjudicated to be neglected as defined by [ N.C. Gen. Stat. § 7B-101(15) (2017) ] because they lived in an environment injurious to their welfare and because they did not receive proper care or supervision from their mother and/or father."
We note the adjudication procedure employed by the trial court does not comply with the statutory requirements of a consent adjudication order, in that neither respondent-mother nor her counsel were present when consent was given, see N.C. Gen. Stat. § 7B-801(b1)(1) (2017), and the court did not "make [ ] sufficient findings of fact" to support the adjudication of neglect, N.C. Gen. Stat. § 7B-801(b1)(3) (2017).[3] See In re A.B. , --- N.C. App. ----, ----, 799 S.E.2d 445, 450-51 (2017) (explaining that "ultimate findings must arise 'by processes of logical reasoning from the evidentiary facts' found by the court" (quoting In re Anderson , 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) ) ). However, as neither respondent appealed from the Adjudication Order, it is not before this Court for review. Cf. In re D.R.F. , 204 N.C. App. 138, 141, 693 S.E.2d 235, 238 ("declin[ing] to review an adjudication order from which respondent-mother had failed to appeal"), disc. review denied , 364 N.C. 616, 705 S.E.2d 358 (2010).
The parties and their counsel signed a "Memorandum of Judgment" on 18 June 2015 reflecting their "stipulated agreement" as to disposition. Pursuant to this document, the trial court entered a "Consent Order Dispositional Hearing" ("Disposition Order") on 29 June 2015 continuing the children in DSS custody, awarding respondents one hour of weekly supervised visitation with the children at the Family Resource Center, and directing respondents to cooperate with DSS "in addressing their respective case plans' activities and goals." The Disposition Order lacked findings of fact but incorporated by reference the DSS summary and report of the guardian ad litem dated 18 June 2015, "except for portions which are mutually agreed by all parties to be excluded, if any." Inter alia , these documents stated that both respondents tested positive for methamphetamine at a drug screen on 29 April 2015; that, during her forensic evaluation, Taylor disclosed "sexual abuse by [respondent-]father and another man abetted by [respondent-]mother"; and that Taylor and Hannah were experiencing "extreme PTSD triggered by visits."[4]
In February 2016, respondent-mother gave birth to a sixth child, "Haley," who entered DSS custody on 13 February 2016 upon respondents' arrest on criminal charges related to the alleged sexual abuse of Taylor. Respondents were released on bond in April 2016, and Haley was adjudicated neglected on 3 August 2016. See In re H.W. , --- N.C. App. ----, 809 S.E.2d 925 (2018) (unpublished) (affirming Haley's adjudication as neglected but reversing the trial court's "consent dispositional order" and remanding for entry of a new order "properly supported by sufficient findings of fact").
Consistent with the procedures used at the initial adjudication and disposition, the trial court entered a series of review and permanency planning orders based on memoranda signed by the parties and their counsel. The memoranda affirmed the parties' "agreement to settle" the issues otherwise scheduled for hearing and outlined the "terms and conditions" to which they agreed.
On 24 October 2016, the court entered a "Consent Order Permanency Planning Hearing" ("Permanency Planning Order") pursuant to a memorandum signed on 13 October 2016. The Permanency Planning Order relieved DSS of further reunification efforts and changed the children's permanent plan from reunification with respondents to guardianship with a concurrent plan of adoption and termination of parental rights. It further provided that respondents would have no visitation with the children but that DSS would request a home study of Ms. W.'s residence in Morganton, Georgia, through the Interstate Compact on the Placement of Children ("ICPC") and provide a copy of the home study to respondents' counsel and the guardian ad litem .
Despite having "acknowledged their voluntary execution of the agreements and stipulations" contained in the Permanency Planning Order by signing the 13 October 2016 memorandum, respondents each filed a "Notice to Preserve Right of Appeal" from the order.[5] Cf. N.C. Gen. Stat. § 7B-1001(a)(5) (allowing a respondent-parent to appeal a permanency planning "order that eliminates reunification from the permanent plan together with an appeal of the termination of parental rights order"); but cf. In re J.A.K. , ---N.C. App. ----, ----, --- S.E.2d ----, ----, 2018 WL 1161923, *2 & n.3 (2018) (stating "the plain language of Section 7B-1001(a)(5) suggests that written notice [preserving the right to appeal] is no longer required").
Respondents' seventh child ("Gerald") was born in December 2016. Respondents placed Gerald with Ms. W. and granted her temporary guardianship of the child.
DSS filed petitions to terminate respondents' parental rights to Taylor, Hannah, and Alexander on 24 January 2017. After a hearing on 22 May 2017, the trial court entered orders terminating respondents' parental rights on 22 August 2017. The court adjudicated grounds for termination based on respondents' neglect of the children, their willful failure to make reasonable progress to correct the conditions leading to the children's removal from the home, and their willful abandonment of the children. See N.C. Gen. Stat. § 7B-1111(a)(1)-(2), (7) (2017). The court further concluded that terminating respondents' parental rights was in the best interest of each child. Respondents filed timely notices of appeal.
II. Findings of Fact
Respondents first claim the trial court erred in its 24 October 2016 Permanency Planning Order by eliminating reunification from the children's permanent plan and ceasing reunification efforts without making sufficient findings of fact under N.C. Gen. Stat. § 7B-906.2 (2017). We agree.
A. Standard of Review
"This Court's review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." In re P.O. , 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010). Here, however, the trial court entered its Permanency Planning Order without hearing evidence, relying instead on the stipulations included in the memorandum signed by the parties on 13 October 2016. See generally In re I.S. , 170 N.C. App. 78, 86, 611 S.E.2d 467, 472 (2005) (" '[S]tipulations are judicial admissions and are therefore binding in every sense, preventing the party who agreed to the stipulation from introducing evidence to dispute it and relieving the other party of the necessity of producing evidence to establish an admitted fact.' " (quoting Thomas v. Poole , 54 N.C. App. 239, 241, 282 S.E.2d 515, 517 (1981) ) ).
B. Analysis
As a general matter, trial courts may not "conduct[ ] permanency planning hearings and ceas[e] reunification efforts without receiving any oral testimony in open court." In re J.T. , --- N.C. App. ----, ----, 796 S.E.2d 534, 536 (2017). However, the Juvenile Code authorizes the entry of a consent order in an abuse, neglect, or dependency proceeding, provided all of the following obtain:
(1) All parties are present or represented by counsel, who is present and authorized to consent.
(2) The juvenile is represented by counsel.
(3) The court makes sufficient findings of fact .
N.C. Gen. Stat. § 7B-801(b1) (2017) (emphasis added). Respondents challenge only the sufficiency of the findings made in the Permanency Planning Order. See N.C. Gen. Stat. § 7B-801(b1)(3).
Section 7B-906.2 of the Juvenile Code mandates that "[r]eunification shall remain a primary or secondary [permanent] plan unless the court ... makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b). The statute further specifies that "the court shall make written findings as to each of the following, which shall demonstrate lack of success:"
(1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
(2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
(3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
(4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.
N.C. Gen. Stat. § 7B-906.2(d) (2017).
In order to comply with section 7B-906.2, an order " 'must make clear that the trial court considered the evidence in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time.' " In re A.E.C. , 239 N.C. App. 36, 42, 768 S.E.2d 166, 170 (quoting In re L.M.T. , 367 N.C. 165, 167-68, 752 S.E.2d 453, 455 (2013) ), disc. review denied , --- N.C. ----, 772 S.E.2d 711 (2015). " 'The trial court's written findings must address the statute's concerns, but need not quote its exact language.' " Id. (quoting In re L.M.T. , 367 N.C. at 168, 752 S.E.2d at 455 ).
The Permanency Planning Order includes the following findings of fact supporting the trial court's decision to eliminate reunification from the permanent plan and relieve DSS of reunification efforts:
5. The respondent parents have pending criminal charges related to the juveniles involved in these juvenile proceedings.
....
9. The Department will request an ICPC home study from the state of Georgia with regard to the paternal grandmother, [Ms. W.] .... [DSS] will provide a copy of the ICPC home study to the guardian ad litem, the attorney advocate and to the respondent parents through their respective attorneys.
10. It is contrary to the juveniles' health, safety, well-being and best interests to be return[ed] to or placed in the physical custody or legal custody of either of the juveniles' parents at this time.
....
14. [DSS] has provided ... reasonable efforts to implement the juveniles' permanent plan of reunification with their parents: arranged for the juveniles' parents to meet with [Alexander's] occupational therapist to learn about how to better interact with him; Food Stamps; Medicaid; case management services; drug screens; daycare; WIC; transportation; mental health and substance abuse assessments; home visits and visitation plans; transportation to insure visits; referrals for the children for services through Appalachian Community Services; Child Development Services for [Hannah] and [Alexander]; speech services for [Hannah] and [Alexander]; and a current psychological evaluation for [Hannah] to help determine the cause of her global developmental delays.
15. The Court finds that the efforts set forth in the preceding paragraph are, in fact, reasonable but have not been effective because of the current criminal charges pending against [respondents] which involve one of the juveniles.
....
17. The respondent parents have completed the following components of their respective case plans either individually or together as indicated: parenting classes; [respondent-mother] has completed SAIOP; respondent parents have appropriate housing; [respondent-mother] is employed; [respondent-father] is on disability; and both parents attended visitation with the juveniles when allowed.
(Emphasis added). We note that, at the time of the termination hearing on 22 May 2017, the ICPC home study contemplated by Finding 9 had yet to be performed.
The Permanency Planning Order lacks the ultimate finding required by N.C. Gen. Stat. § 7B-906.2(b) that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile[s'] health or safety." N.C. Gen. Stat. § 7B-906.2(b) ; see also In re A.E.C. , 239 N.C. App. at 43, 768 S.E.2d at 171 (holding that "the trial court was required to make ultimate findings specially based on a process[ ] of logical reasoning" from its evidentiary findings (citation and internal quotation marks omitted) ). Moreover, in no way do the facts included in the order "make clear that the trial court considered the [circumstances] in light of whether reunification would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." In re L.M.T. , 367 N.C. at 167-68, 752 S.E.2d at 455 ; cf. also In re K.L. , ---N.C. App. ----, ----, 802 S.E.2d 588, 597 (2017) ("This Court cannot infer from the minimal findings that reunification efforts would be futile or inconsistent with the juveniles' health or safety"). The findings reflect the trial court's assessment that the sole reason reunification efforts "have not been effective" to date is the "current criminal charges" then pending against respondents. (Emphasis added). Further, with regard to the factors in N.C. Gen. Stat. § 7B-906.2(d)(1)-(4), the order merely lists respondents' achievements in satisfying aspects of their case plans, with nary a word about any unmet requirements.
Criminal charges are inherently transitory and, as noted by respondent-mother, do not constitute evidence of an accused's guilt, parenting capacity, or future prospects. But cf. In re H.D. , 239 N.C. App. 318, 323-24, 768 S.E.2d 860, 864 (2015) (holding that trial court's "findings, particularly the [respondent-mother's] pending criminal charges, all indicated 'repeated failures at creating an acceptable and safe living environment certainly suggest that reunification efforts would be futile' " (quoting In re M.D. , 200 N.C. App. 35, 43, 682 S.E.2d 780, 785 (2009) ). We conclude the bare finding of respondents' pending criminal charges is insufficient to support the trial court's elimination of reunification efforts under N.C. Gen. Stat. § 7B-906.2(b), (d).
It is of no moment that respondents purported to "waive findings of fact and conclusions of law" as part of the signed memorandum executed in support of the Permanency Planning Order. Although parties may stipulate to the existence of facts and/or authorize the entry of consent orders in the manner prescribed by N.C. Gen. Stat. § 7B-801(b1), the trial court is not free to circumvent the requirements of the Juvenile Code-even with the consent of the parties.[6]
Our conclusion that the Permanency Planning Order lacks sufficient findings to comply with N.C. Gen. Stat. § 7B-906.2 does not end our inquiry. "Our Supreme Court has held that incomplete findings of fact in an order ceasing reunification can be cured by findings of fact in a related termination order." In re J.T. , --- N.C. App. ----, ----, 796 S.E.2d 534, 536-37 (2017) (citing In re L.M.T. , 367 N.C. at 170-71, 752 S.E.2d at 456-57 ). However, our review of the termination orders reveals their findings are insufficient to cure the defects in the Permanency Planning Order with regard to the trial court's decision to cease reunification efforts and eliminate reunification from the children's permanent plan in October 2016. See id. at ----, 796 S.E.2d at 537. Accordingly, we must vacate the Permanency Planning Order and the resulting orders terminating respondents' parental rights "and remand for further proceedings consistent with this opinion." Id. As a result of our ruling, we need not address respondents' remaining arguments.
VACATED AND REMANDED.
Report per Rule 30(e).
Judges INMAN and ARROWOOD concur.

The parties stipulated to these pseudonyms to protect the juveniles' identities. We use additional pseudonyms as necessary.

An otherwise-identical copy of the order filed-stamped on 2 July 2015 also appears in the record on appeal.

Although the Stipulated Memorandum incorporates by reference a written report submitted by DSS, no similar incorporation-by-reference appears in the Adjudication Order. Nor would it satisfy the fact-finding requirement for a consent order in N.C. Gen. Stat. § 7B-801(b1)(3). See generally In re A.S. , 190 N.C. App. 679, 693, 661 S.E.2d 313, 322 (2008) (stating that "the trial court may not delegate its fact finding duty" and that "the trial court should not broadly incorporate these written reports from outside sources as its findings of fact." (quoting In re J.S. , 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004) ), aff'd , 363 N.C. 254, 675 S.E.2d 361 (2009) ).

On 3 August 2015, DSS notified respondents through counsel that it was suspending their visitation with the children. Respondent-mother filed a motion for review challenging the decision. On 14 September 2015, the trial court reinstated respondent-mother's supervised visitation subject to the conditions that she provide no books to the children as gifts or discuss the case or respondents' pending criminal charges with the children. On 22 December 2015, the court modified its order to allow both respondents visitation with Hannah and Alexander, with respondent-father's visits resuming on 29 December 2015. The court suspended all visitation on 2 June 2016.

Respondents' "Notice[s] to Preserve" appear untimely under N.C. Gen. Stat. § 7B-1001(b) (2017), despite their filing of documents styled "Acceptance of Service" contemporaneously with their notices. The Permanency Planning Order includes a certificate of service dated 24 October 2016 reflecting service upon respondents' counsel. Nevertheless, notice preserving the right to appeal no longer seems required under N.C. Gen. Stat. § 7B-1001(a)(5) (2017), notwithstanding the language in subsection (b).

As a practical matter, a party may effect a waiver of these statutory requirements by forgoing the right of appeal.