IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA19-252

 Filed: 18 August 2020

Nash County, No. 16 JT 140

IN THE MATTER OF: J.T.C.

 Appeal by Respondent from order entered 4 September 20181 by Judge John

M. Britt in Nash County District Court. Heard in the Court of Appeals 27 May 2020.

 Mark L. Hayes for petitioner-appellee.

 Leslie Rawls for respondent-appellant.

 ARROWOOD, Judge.

 Respondent-father, father of “Jeffrey,”2 appeals from the trial court’s order

granting the petition filed by Jeffrey’s mother (“Petitioner”) for the termination of his

parental rights. For the following reasons, we affirm.

 I. Background

 1 The record contains two versions of the trial court’s order, both file-stamped on
31 August 2018. The first order was signed on the trial judge’s behalf by an assistant clerk of court on
31 August 2018; the second was signed by the judge on 4 September 2018, four days after the
purported filing date. Because N.C. Gen. Stat. § 1A-1, Rule 58 (2019) provides that “a judgment is
entered when it is reduced to writing, signed by the judge, and filed with the clerk of court[,]” we deem
the order entered on the date that all three requirements were satisfied. We also note Respondent-
father’s amended notice of appeal is timely given the 7 September 2018 date of service of the
termination order.
 2 A pseudonym is used to protect the identity of the juvenile and for ease of reading.
 IN RE: J.T.C.

 Opinion of the Court

 Jeffrey was born in Nash County, North Carolina, in November 2010.

Petitioner and Respondent-father never married but lived together with Jeffrey for a

period after his birth.

 On 8 June 2011, Petitioner obtained a domestic violence protective order

(“DVPO”) against Respondent-father after he threatened her and choked her until

she lost consciousness. The trial court found Jeffrey had been exposed to the violence

and granted Petitioner temporary custody for the duration of the DVPO, which

expired on 7 June 2012.

 Petitioner and Respondent-father temporarily reunited. Respondent-father

was subsequently incarcerated. Following his release from prison in November 2014,

Respondent-father engaged in additional domestic violence against Petitioner

resulting in the entry of a second DVPO on 6 January 2015. The DVPO granted

Petitioner temporary custody of Jeffrey until 7 April 2015 and expired on 7 July 2015.

Petitioner and Respondent-father did not resume their relationship thereafter.

Petitioner arranged any visits between Respondent-father and Jeffrey after the

expiration of that DVPO. At Petitioner’s invitation, Respondent-father came to

Jeffrey’s birthday party in November 2015, visited Jeffrey around Christmas at Wal-

Mart in December 2015, and attended a birthday party in April 2016 for one of

Jeffrey’s friends for approximately three hours.

 -2-
 IN RE: J.T.C.

 Opinion of the Court

 On 12 December 2016, Petitioner filed a petition in Nash County District

Court to terminate Respondent-father’s parental rights pursuant to Article 11 of

Chapter 7B of the North Carolina General Statutes. After a hearing on 12 April 2018,

the trial court adjudicated grounds for termination existed based on Respondent-

father’s neglect and willful abandonment of Jeffrey under N.C. Gen. Stat. § 7B-

1111(a)(1) and (7) (2019). The court held a dispositional hearing on 2 August 2018

and further determined that terminating Respondent-father’s parental rights was in

Jeffrey’s best interest. Respondent-father gave timely notice of appeal from the

termination of parental rights order (“the termination order”).

 II. Discussion

 A. Standard of Appellate Review

 We employ a familiar two-part framework on appeal from an order terminating

parental rights. “We review a trial court’s adjudication under N.C. [Gen. Stat.] § 7B-

1111 ‘to determine whether the findings are supported by clear, cogent and

convincing evidence and the findings support the conclusions of law.’ ” Matter of

E.H.P., 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting In re Montgomery, 311

N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). “We review de novo whether a trial court’s

findings support its conclusions.” Matter of Z.D., 258 N.C. App. 441, 443, 812 S.E.2d

668, 671 (2018). With regard to disposition, “ ‘[w]e review the trial court’s conclusion

that a termination of parental rights would be in the best interest of the child on an

 -3-
 IN RE: J.T.C.

 Opinion of the Court

abuse of discretion standard.’ ” Matter of A.H., 250 N.C. App. 546, 565, 794 S.E.2d

866, 879 (2016) (quoting In re R.B.B., 187 N.C. App. 639, 648, 654 S.E.2d 514, 521

(2007)). The trial court’s dispositional findings under N.C. Gen. Stat. § 7B-1110(a)

need only be supported by competent evidence. See id. at 565, 794 S.E.2d at 879-80;

see also In re Eckard, 144 N.C. App. 187, 197, 547 S.E.2d 835, 841, remanded for

reconsideration on other grounds, 354 N.C. 362, 556 S.E.2d 299 (2001).

 For purposes of appellate review, findings of fact to which no exception is taken

are binding. In re H.S.F., 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (citing

Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). Furthermore,

“erroneous findings unnecessary to the determination do not constitute reversible

error” where the trial court’s remaining findings independently support its

conclusions of law. In re T.M., 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006).

 B. Respondent-father’s Arguments on Appeal

 1. Findings of Fact

 Respondent-father challenges the following two findings of fact as not

supported by the evidence:

 21. Respondent[-father] has not shown adequate
 interest with regard to raising and supporting
 the minor child.

 22. Respondent[-father] has not declared or shown
 love for the minor child throughout this
 proceeding.

 -4-
 IN RE: J.T.C.

 Opinion of the Court

He contends the hearing “transcript directly contradicts and undermines these

findings.”

 Initially, we note the trial court’s order does not divide or otherwise distinguish

its adjudicatory findings from its dispositional findings. Moreover, the court purports

to make all of its findings “based on clear, cogent, and convincing evidence[.]”

 From our examination of the order, it appears the trial court arranged its

findings of fact sequentially. Findings 1-8 establish the basis for the trial court’s

jurisdiction in the cause. Findings 9-12 are adjudicatory in nature, addressing

Petitioner’s asserted grounds for termination under N.C. Gen. Stat. § 7B-1111(a)(1)

and (7). Findings 13-25 are dispositional, addressing the statutory criteria in N.C.

Gen. Stat. § 7B-1110(a)(1)-(6) as a basis for determining Jeffrey’s best interest. It

thus appears the trial court did not rely on Findings 21 and 22 to support its

adjudications, only its disposition.

 Regardless of whether the contested findings are adjudicatory or dispositional,

we find ample evidence to support Finding 21. At the adjudicatory hearing,3

 3 Findings made in support of an adjudication under N.C. Gen. Stat. § 7B-1111(a) must be
based on evidence adduced at the adjudicatory stage of the proceeding. See N.C. Gen. Stat. § 7B-
1109(e) (2019). Dispositional findings under N.C. Gen. Stat. § 7B-1110 may be based on evidence
presented at either the adjudicatory or dispositional stage of the hearing. See In re Blackburn, 142
N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001) (“Evidence heard or introduced throughout the
adjudicatory stage, as well as any additional evidence, may be considered by the court during the
dispositional stage.”); see also In re R.B.B., 187 N.C. App. at 643-44, 654 S.E.2d at 518 (noting “a trial
court may combine the N.C. [Gen. Stat.] § 7B-1109 adjudicatory stage and the N.C. [Gen. Stat.] § 7B-
1110 dispositional stage into one hearing, so long as the trial court applies the correct evidentiary
standard at each stage”).

 -5-
 IN RE: J.T.C.

 Opinion of the Court

Petitioner testified Respondent-father had paid nothing toward Jeffrey’s support in

the preceding three years and had no contact with Jeffrey since attending an event

at a skating rink at Petitioner’s invitation in April 2016.

 Petitioner described Respondent-father’s conduct while they lived together

with Jeffrey as follows:

 There was a lot of domestic violence. [Respondent-father]
 had a lot of drug issues. He was always using. He was
 never really home. I cannot really say that he supported
 his child. Even though we did stay in the same house. He
 was there (inaudible). He was not a good father figure to
 his child.

 Petitioner also testified that although the initial DVPO issued in 2011 provided

Respondent-father with the right to visit Jeffrey, Respondent-father did not exercise

his visitation rights. Likewise, after the second DVPO expired on 7 July 2015,

Respondent-father made no attempt to contact Petitioner to see Jeffrey or to provide

support for the child. Respondent-father saw Jeffrey on just three occasions after

7 July 2015: at Jeffrey’s birthday party in November 2015, on Christmas of 2015,

and at the skating rink in April 2016. On each occasion, it was Petitioner who

reached out to Respondent-father and invited him to see his son. Respondent-father

did not bring any gifts for Jeffrey to these events or pay any amount toward the

scheduled activities.

 Petitioner affirmed Respondent-father had not seen Jeffrey or made any

attempt to contact or provide support for the child in the eight months that preceded

 -6-
 IN RE: J.T.C.

 Opinion of the Court

her filing of the petition in this cause on 12 December 2016. Although Respondent-

father’s relatives contacted Petitioner asking to see Jeffrey after she filed her petition,

they did not mention Respondent-father. Respondent-father’s wife also attempted to

contact Petitioner on Facebook, saying she and Respondent-father wanted to see

Jeffrey, but did so only “a full seven months” after the petition was filed.

 Respondent-father, his wife, and his aunt testified at the adjudicatory hearing

and disputed aspects of Petitioner’s testimony. It is well-established, however, that

“[c]redibility, contradictions, and discrepancies in the evidence are matters to be

resolved by the trier of fact, here the trial judge, and the trier of fact may accept or

reject the testimony of any witness.” Smith v. Smith, 89 N.C. App. 232, 235, 365

S.E.2d 688, 691 (1988) (citation omitted).

 Moreover, Respondent-father acknowledged not having seen Jeffrey since

April 2016 at the skating rink and having neither provided support for, nor “filed for

custody” of, Jeffrey. Respondent-father’s explanations for his inaction were belied by

his own testimony and that of his witnesses. When asked why he had never sought

custody of Jeffrey, for example, Respondent-father claimed he had no money for an

attorney “[b]ecause at the time [he] didn’t have a job.” He later testified that he had

been employed in his current full-time job for “[a]bout two years”—well before

Petitioner filed to terminate his parental rights. Respondent-father also claimed he

had been unable to contact Petitioner about Jeffrey because he did not know where

 -7-
 IN RE: J.T.C.

 Opinion of the Court

she lived, and because she frequently changed her phone number. He then testified

that his “cousin actually stays two doors down from [Petitioner].” Respondent-

father’s wife subsequently described making “numerous” phone calls to Petitioner

despite her changing phone number, as follows:

 Q. . . . [H]ow can you talk to her numerous times but
 you can’t reach her because her phone number
 always changes?

 A. There is -- because when we would get the new
 number I would call. And no, she didn’t really
 want to talk to me but you know, (inaudible) and
 wanted to be in his children’s life -- and that -- so
 you know what, I’m going to call it. I’m going to
 ask to see [Jeffrey]. She did not particularly like
 the call but she was going to get it.

Respondent-father’s exception to Finding 21 is overruled.

 Respondent-father also challenges Finding 22, which states he “has not

declared or shown love for the minor child through this proceeding.” The hearing

transcript shows Respondent-father expressly testified in reference to Jeffrey, “I love

my son.” While we construe the term “this proceeding” in Finding 22 as referencing

the entire period since Petitioner filed her petition on 12 December 2016, we agree

with Respondent-father that the trial court’s finding is erroneous in light of his

testimony. Nevertheless, because the trial court’s remaining findings independently

support its conclusions of law, we find no reversible error and disregard this finding

for purposes of our review. See In re T.M., 180 N.C. App. at 547, 638 S.E.2d at 240.

 -8-
 IN RE: J.T.C.

 Opinion of the Court

 2. Adjudication under N.C. Gen. Stat. § 7B-1111(a)(7)

 Respondent-father claims the evidence and the trial court’s findings of fact do

not support its adjudication of grounds to terminate his parental rights pursuant to

N.C. Gen. Stat. § 7B-1111(a)(7), which authorizes termination when “[t]he parent has

willfully abandoned the juvenile for at least six consecutive months immediately

preceding the filing of the petition[.]” N.C. Gen. Stat. § 7B-1111(a)(7). Our Supreme

Court has provided the following guidance for applying this provision:

 We have held that [a]bandonment implies conduct on the
 part of the parent which manifests a willful determination
 to forego all parental duties and relinquish all parental
 claims to the child. It has been held that if a parent
 withholds his presence, his love, his care, the opportunity
 to display filial affection, and wil[l]fully neglects to lend
 support and maintenance, such parent relinquishes all
 parental claims and abandons the child.

Matter of E.H.P., 372 N.C. at 393, 831 S.E.2d at 52 (first alteration in original)

(internal citations and quotation marks omitted).

 The dispositive six-month period in this case is 12 June 2016 to

12 December 2016. The trial court made the following findings relevant to its

adjudication under N.C. Gen. Stat. § 7B-1111(a)(7):4

 4 Respondent-father asserts that “Findings of fact ## 18, 19, 20, 21, and 22 are . . . insufficient
to support an adjudication of abandonment.” As previously discussed, we believe these findings were
made for dispositional purposes under N.C. Gen. Stat. § 7B-1110(a) in assessing whether terminating
Respondent-father’s parental rights is in Jeffrey’s best interest. Therefore, we do not consider them
in reviewing the court’s adjudication under N.C. Gen. Stat. § 7B-1111(a)(7). Cf. Matter of A.R.A., 373
N.C. 190, 195, 835 S.E.2d 417, 421 (2019) (“[W]e limit our review of challenged findings to those that
are necessary to support the district court’s determination that this ground [for termination]
existed . . . .”).

 -9-
 IN RE: J.T.C.

 Opinion of the Court

 10. Petitioner has proven through clear, cogent, and
 convincing evidence that, pursuant to [N.C. Gen.
 Stat.] §[ ]7B-1111(a)(7), the Respondent[-father] has
 willfully neglected and abandoned the minor child for
 at least six (6) consecutive months immediately
 preceding the filing of the Petition.

 11. Respondent[-father] has had no contact with the
 minor child since an April 9, 2016 birthday party at
 Sky-Vue Skateland in Rocky Mount and has not
 provided any form of support whether in cash or in
 kind, medical, or otherwise for the child since at least
 December 26, 2015.

 12. In the six months immediately preceding the filing of
 the Petition, the Respondent[-father] did [not] have
 any contact or communication with the minor child
 nor did he directly attempt to contact the minor child
 or provide the minor child any care, supervision,
 support, discipline, gift, card, or letter; Respondent[-
 father] has not met any need of the minor child and
 has been absent from the minor child’s life since on or
 about December 26, 2015.

To the extent Respondent-father does not except to the trial court’s findings of fact,

specifically Findings 11 and 12, they are binding on appeal. In re H.S.F., 182 N.C.

App. at 742, 645 S.E.2d at 384.

 We agree with Respondent-father that Finding 10 amounts to a conclusion of

law, inasmuch as it declares Petitioner’s success in establishing the statutory ground

for termination in N.C. Gen. Stat. § 7B-1111(a)(7) under the applicable burden of

proof in N.C. Gen. Stat. § 7B-1109(f). See Matter of Helms, 127 N.C. App. 505, 510,

491 S.E.2d 672, 675-76 (1997) (reasoning that a “determination of neglect requires

 - 10 -
 IN RE: J.T.C.

 Opinion of the Court

the application of the [relevant] legal principles . . . and is therefore a conclusion of

law.”); see also In re S.Z.H., 247 N.C. App. 254, 261-62, 785 S.E.2d 341, 347 (2016)

(characterizing adjudication of abandonment under (a)(7) as a conclusion of law). The

trial court’s classification of its own determination as a finding or conclusion does not

govern our analysis. See State v. Icard, 363 N.C. 303, 308, 677 S.E.2d 822, 826 (2009)

(treating as conclusions of law those findings of fact which resolved a question of law).

We treat Finding 10 as a conclusion of law and apply the appropriate de novo

standard of review. See id. (“While we give appropriate deference to the portions of

Findings No. 37 and 39 that are findings of fact, we review de novo the portions of

those findings that are conclusions of law.”).

 Based on its findings of fact, the court reached the following conclusions of law:

 3. The Respondent[-father] . . . through testimony and
 evidence presented at this proceeding, is determined to
 have willfully abandoned the minor child, [Jeffrey], for
 at least six consecutive months immediately preceding
 the filing of the petition pursuant to N.C. [Gen. Stat.] §
 7B-1111(a)(7).

 4. Respondent[-father]’s conduct manifests a willful
 determination to forego all parental duties and
 obligations toward said minor child.

 5. There is sufficient, clear, cogent and convincing
 evidence to terminate the parental rights of
 [Respondent-father] to [Jeffrey] pursuant to N.C. [Gen.
 Stat.] § 7B-1111.

 - 11 -
 IN RE: J.T.C.

 Opinion of the Court

As with ostensible Finding 10, we view Conclusion 4 as more in the nature of a finding

of fact. Our courts have held the willfulness of parent’s conduct to be a question of

fact rather than law. Pratt v. Bishop, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962).

Conclusion 4 thus amounts to an ultimate finding by the trial court, based on

inferences drawn from the evidence and Respondent-father’s objective behavior

toward Jeffrey. Because Respondent-father has challenged Conclusion 4 on appeal,

we review it under the appropriate standard. See State v. Burns, 287 N.C. 102, 110,

214 S.E.2d 56, 61-62 (1975).

 Respondent-father takes no exception to the trial court’s statements in

Findings 11 and 12 that he had no contact with Jeffrey after 9 April 2016; that he

provided no support of any kind for Jeffrey “since at least December 26, 2015”; and

that he did not “directly attempt to contact [Jeffrey] or provide the minor child any

care, supervision, support, discipline, gift, card, or letter . . . and has been absent

from the minor child’s life since on or about December 26, 2015.” We find the

evidence, as reflected in these findings, further supports the trial court’s ultimate

finding in Conclusion 4 that Respondent-father’s conduct during the critical six

months evinces a “willful determination to forego all parental duties and obligations

toward [Jeffrey].” Taken together, these findings in turn support the trial court’s

conclusion of law that Respondent-father “willfully abandoned the minor child,

[Jeffrey], for at least six consecutive months immediately preceding the filing of the

 - 12 -
 IN RE: J.T.C.

 Opinion of the Court

petition pursuant to N.C. [Gen. Stat.] §[ ]7B-1111(a)(7).” See Matter of E.H.P., 372

N.C. at 394, 831 S.E.2d at 53 (upholding adjudication of willful abandonment where,

“[b]y his own admission, respondent had no contact with his children during the

statutorily prescribed time period . . . [and] made no effort to have any form of

involvement with the children for several consecutive years following the entry of the

Temporary Custody Judgment” awarding custody to the petitioner).

 Unlike the cases cited by Respondent-father, the evidence shows no effort by

Respondent-father during the relevant six-month period to have any form of contact

or communication with Jeffrey, or to provide for his support in any manner. In In re

S.Z.H., “respondent called Sally during roughly half of the relevant six-month

period . . . and asked petitioner if he could attend Sally’s birthday party[.]” 247 N.C.

App. at 261, 785 S.E.2d at 346. “[E]ven during the last half of the six-month period,

the evidence tended to show that respondent attempted to communicate with Sally

but petitioner stopped allowing him to contact her.” Id. at 261, 785 S.E.2d at 346-47.

Similarly in Matter of D.M.O., the trial court’s findings were held insufficient to

support an adjudication of abandonment because they failed to resolve conflicts in

the evidence about “whether and to what extent respondent-mother called, texted,

and mailed letters during the relevant period; whether and to what extent

respondent-mother was able to participate in exercising parental duties on account

of her periodic incarceration at multiple jails; and whether and to what extent

 - 13 -
 IN RE: J.T.C.

 Opinion of the Court

petitioner-father hindered respondent-mother from communicating with [the

juvenile] or exercising visitation[.]” 250 N.C. App. 570, 580, 794 S.E.2d 858, 866

(2016). The facts sub judice show no similar efforts by Respondent-father toward

Jeffrey and no hindrance to Respondent-father akin to the respondent-parent’s

incarceration in Matter of D.M.O. during the six months at issue.

 We are not persuaded by Respondent-father’s suggestion that the efforts made

by his wife and relatives to contact Petitioner foreclose an adjudication of willful

abandonment under N.C. Gen. Stat. § 7B-1111(a)(7). Where, as here, a parent has

the means to undertake personal efforts toward maintaining a relationship with his

child, he will not be absolved of his parental responsibilities by the efforts of third

parties. The evidence shows Respondent-father had the ability to contact Petitioner

directly about Jeffrey but made no effort to do so. Respondent-father also provided

no financial support for Jeffrey despite having full-time employment throughout the

six-month period from 12 June 2016 to 12 December 2016. Accordingly, we hold the

trial court properly adjudicated grounds for terminating Respondent-father’s

parental rights based on willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7).

 Because we affirm the trial court’s adjudication under N.C. Gen. Stat. § 7B-

1111(a)(7), we need not review the second ground for termination found by the court

under N.C. Gen. Stat. § 7B-1111(a)(1). Matter of E.H.P., 372 N.C. at 395, 831 S.E.2d

at 53.

 - 14 -
 IN RE: J.T.C.

 Opinion of the Court

 C. Disposition under N.C. Gen. Stat. § 7B-1110(a)

 Respondent-father also claims the trial court abused its discretion at the

dispositional stage of the proceeding by concluding that termination of his parental

rights is in Jeffrey’s best interest. “ ‘A ruling committed to a trial court’s

discretion . . . will be upset only upon a showing that it was so arbitrary that it could

not have been the result of a reasoned decision.’ ” In re S.C.R., 198 N.C. App. 525,

536, 679 S.E.2d 905, 911-12 (2009) (emphasis in original) (quoting White v. White,

312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)).

 “Once a trial court has concluded during the adjudication phase that grounds

exist for termination of parental rights, it must decide in the disposition phase

whether termination is in the best interests of the child.” In re D.R.F., 204 N.C. App.

138, 141, 693 S.E.2d 235, 238 (2010) (citing In re Mills, 152 N.C. App. 1, 7, 567 S.E.2d

166, 169-70 (2002)). Under N.C. Gen. Stat. § 7B-1110(a),

 The court may consider any evidence, including hearsay
 evidence as defined in G.S. 8C-1, Rule 801, that the court
 finds to be relevant, reliable, and necessary to determine
 the best interests of the juvenile. In each case, the court
 shall consider the following criteria and make written
 findings regarding the following that are relevant:

 (1) The age of the juvenile.

 (2) The likelihood of adoption of the juvenile.

 (3) Whether the termination of parental rights will
 aid in the accomplishment of the permanent plan
 for the juvenile.

 - 15 -
 IN RE: J.T.C.

 Opinion of the Court

 (4) The bond between the juvenile and the parent.

 (5) The quality of the relationship between the
 juvenile and the proposed adoptive parent,
 guardian, custodian, or other permanent
 placement.

 (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2019). Although the court must consider each of these

factors, written findings are required only “if there is ‘conflicting evidence concerning’

the factor, such that it is ‘placed in issue by virtue of the evidence presented before

the trial court[.]’ ” In re H.D., 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015)

(quoting In re D.H., 232 N.C. App. 217, 221 n.3, 753 S.E.2d 732, 735 n.3 (2014)).

 The trial court made the following findings under N.C. Gen. Stat. § 7B-

1110(a)(1)-(6):

 13. The minor child is seven (7) years old . . . .

 14. The likelihood that the minor child will be adopted is
 good; Petitioner’s husband’s testimony indicates his
 desire to adopt the minor child and the minor child
 indicated that he wished to be adopted by Petitioner’s
 husband.

 15. That the termination of parental rights will aid in the
 accomplishment of the permanent plan for the minor
 child; the adoption of the minor child by Petitioner’s
 husband will provide needed emotional and financial
 stability and ensure the juvenile’s continued positive
 growth and development that has been fostered in the
 juvenile’s current home setting with Petitioner and
 her husband.

 - 16 -
 IN RE: J.T.C.

 Opinion of the Court

 16. That the bond between the minor child and the
 Respondent[-father] is poor, with the minor child
 having very little recollection of Respondent[-father].

 17. The quality of the relationship between the minor
 child and the proposed adoptive parent is good; the
 minor child and the proposed adoptive parent have a
 strong familial bond, enjoy similar activities, and
 spend a great deal of time together; the proposed
 adoptive parent has provided the minor child with
 continued emotional and financial support in a
 parental role over approximately the last two (2)
 years.

 18. The Respondent[-father] has a lengthy history of
 assaultive behavior against the Petitioner Mother.

 19. The Respondent[-father] has been involved in
 criminal activity for the majority of the minor child’s
 life and has a lengthy criminal record including
 current pending criminal charges.

 20. Both Respondent[-father] and his wife have numerous
 current positive references to alcohol and drugs in
 their social media postings.

 21. Respondent[-father] has not shown adequate interest
 with regard to raising and supporting the minor child.

 22. Respondent[-father] has not declared or shown love
 for the minor child throughout this proceeding.

 23. It is in the best interest of [Jeffrey] that the parental
 rights of [Respondent-father] for said minor child, be
 terminated based on the foregoing findings of fact.

Having previously addressed Respondent-father’s challenges to Findings 21 and 22,

we disregard Finding 22 to the extent it fails to account for Respondent-father’s

 - 17 -
 IN RE: J.T.C.

 Opinion of the Court

testimony that he loves Jeffrey. There is ample support in the trial court’s remaining

findings to support its conclusions of law, such that the trial court’s ruling was not

“so arbitrary that it could not have been the result of a reasoned decision.” In re

S.C.R., 198 N.C. App. at 536, 679 S.E.2d at 911-12 (emphasis in original) (citation

and internal quotation marks omitted). Accordingly, the trial court did not abuse its

discretion. We further note Finding 23 is actually a conclusion of law, and review it

accordingly. See Helms, 127 N.C. App. at 510, 491 S.E.2d at 675 (internal citations

omitted) (“any determination requiring the exercise of judgment or the application of

legal principles is more properly classified a conclusion of law.”).

 Respondent-father does not dispute the evidentiary support for Findings 13-

20, which address each of the factors in N.C. Gen. Stat. § 7B-1110(a). He contends a

portion of Finding 15 is erroneous because it refers to Jeffrey’s “permanent plan”—a

feature only of proceedings initiated by a county director of social services under

Article 4 of Chapter 7B. See N.C. Gen. Stat. §§ 7B-401.1, -906.1, -906.2 (2019). We

agree that Jeffrey has no “permanent plan” as that term is defined in N.C. Gen. Stat.

§ 7B-906.2, and that portion of Finding 15 is thus erroneous. Nevertheless, we do not

believe this amounts to an abuse of discretion.

 In viewing the trial court’s order as a whole, it becomes clear that the one-time

mention of a permanent plan appears to simply be an oversight. Other than in

Finding 15, the trial court makes no reference to the existence of a permanent plan

 - 18 -
 IN RE: J.T.C.

 Opinion of the Court

or the involvement of DSS. In addition, while Finding 15 begins with a brief mention

of a permanent plan, the bulk of it is devoted to a discussion of the benefits of adoption

of the minor child by petitioner’s husband, which the trial court is allowed to consider

as “any relevant consideration” in determining the best interests of the minor child.

See N.C. Gen. Stat. § 7B-1110(a)(6). This Court has said that “erroneous findings

unnecessary to the determination do not constitute reversible error” where the trial

court’s remaining findings independently support its conclusions of law. In re T.M.,

180 N.C. App. at 547, 638 S.E.2d at 240. See also In re B.W., 190 N.C. App. 328, 333,

665 S.E.2d 462, 465 (2008) (disregarding the trial court’s erroneous finding because

“we d[id] not believe that the court’s unsupported finding on this issue was necessary

to its disposition.”). As with Finding 22, in light of the ample support in the trial

court’s remaining findings which support its conclusions of law, we find no abuse of

discretion.

 Finally, Respondent-father’s assertion that Findings 18-20 do not support the

trial court’s adjudication of neglect or abandonment under N.C. Gen. Stat. § 7B-

1111(a) has no bearing on our review of the court’s dispositional determination under

N.C. Gen. Stat. § 7B-1110(a). We are satisfied Respondent-father’s history of

domestic violence toward Jeffrey’s mother, his lengthy criminal record and pending

charges, and his ongoing use of impairing substances with his current wife constitute

“relevant consideration[s]” for purposes of N.C. Gen. Stat. § 7B-1111(a)(6).

 - 19 -
 IN RE: J.T.C.

 Opinion of the Court

 III. Conclusion

 We thus find no abuse of discretion by the trial court in concluding Jeffrey’s

best interests will be served by termination of Respondent-father’s parental rights.

The trial court’s findings show its consideration of the statutory factors in N.C. Gen.

Stat. § 7B-1110(a) and provide sound reasons for its ultimate decision. Although

Respondent-father attested to his desire to establish a relationship with Jeffrey, a

reasonable fact-finder could conclude Jeffrey’s well-being is better served by freeing

him to be adopted by his stepfather. Accordingly, we affirm the order of the trial

court.

 AFFIRMED.

 Judge INMAN concurs.

 Judge MURPHY concurs in the result in part and dissents in part by separate

 opinion.

 - 20 -
 No. COA19-252 – In re J.T.C.

 MURPHY, Judge, concurring in the result in part and dissenting in part.

 Respondent-father appeals from the trial court’s order granting the petition for

termination of his parental rights. As a result of an erroneous finding of fact and a

misapprehension of law, we should vacate the trial court’s order and remand for

further dispositional proceedings consistent with that holding.

 BACKGROUND

 Jeffrey was born in Wilson County in 2010. Petitioner and Respondent-father

never married but lived together with Jeffrey for a period after his birth.

 On 8 June 2011, Petitioner obtained a domestic violence protective order

(“DVPO”) against Respondent-father after he threatened her and choked her until

she lost consciousness. The DVPO found Jeffrey had been exposed to the violence

and granted Petitioner temporary custody for the duration of the DVPO, which

expired on 7 June 2012.

 Petitioner and Respondent-father temporarily reunited. Respondent-father

was subsequently incarcerated. On 6 January 2015, following Respondent-father’s

release from prison in November 2014, a second DVPO was entered based on an

additional incident of domestic violence against Petitioner. The DVPO granted

Petitioner temporary custody of Jeffrey until 7 April 2015 and expired on 7 July 2015.

Petitioner and Respondent-father did not resume their relationship thereafter.

Petitioner arranged any visits between Respondent-father and Jeffrey after the

expiration of that DVPO. At Petitioner’s invitation, Respondent-father came to
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

Jeffrey’s birthday party in November 2015, visited Jeffrey at a Christmas visit at

Wal-Mart in December 2015, and attended a birthday party in April 2016 for one of

Jeffrey’s friends for approximately three hours.

 On 12 December 2016, Petitioner filed in Nash County District Court to

terminate Respondent-father’s parental rights pursuant to Article 11 of Chapter 7B

of the North Carolina General Statutes. See, e.g., N.C.G.S. §§ 7B-1100-1104 (2017).

After a hearing on 12 April 2018, the trial court adjudicated grounds for termination

based on Respondent-father’s neglect and willful abandonment of Jeffrey under

N.C.G.S. § 7B-1111(a)(1) and (a)(7). The trial court held a dispositional hearing on 2

August 2018 and determined that terminating Respondent-father’s parental rights

was in Jeffrey’s best interest. See N.C.G.S. § 7B-1110(a) (2019). Respondent-father

gave timely notice of appeal from the termination of parental rights order (“the

termination order”).

 ANALYSIS

 A. Standard of Review

 “A termination of parental rights proceeding consists of two phases. In the

adjudicatory stage, the petitioner has the burden of establishing by clear and

convincing evidence that at least one of the statutory grounds listed in N.C.[G.S.] §

7B-1111 exists.” In re J.W., 173 N.C. App. 450, 470-71, 619 S.E.2d 534, 548 (2005)

(quoting In re Anderson, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002)), aff’d, 360

N.C. 361, 625 S.E.2d 780 (2006). “Upon determining that one or more of the grounds

 2
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

for terminating parental rights exist, the court moves to the disposition stage to

determine whether it is in the best interests of the child to terminate the parental

rights.” Id. at 471, 619 S.E.2d at 548 (quoting In re Young, 346 N.C. 244, 247, 485

S.E.2d 612, 615 (1997)). “We review whether the trial court’'s findings of fact are

supported by clear and convincing evidence and whether the findings of fact support

the conclusions of law.” Id. (quoting Anderson, 151 N.C. App. at 97, 564 S.E.2d at

602). “We review de novo whether a trial court’s findings support its conclusions.” In

re Z.D., 258 N.C. App. 441, 443-44, 812 S.E.2d 668, 671 (2018).

 With regard to disposition, “[w]e review the trial court’s conclusion that a

termination of parental rights would be in the best interest of the child on an abuse

of discretion standard.” In re A.H., 250 N.C. App. 546, 565, 794 S.E.2d 866, 879 (2016)

(quoting In re R.B.B., 187 N.C. App. 639, 648, 654 S.E.2d 514, 521 (2007)). “All

dispositional orders of the trial court in abuse, neglect and dependency hearings must

contain findings of fact based upon the credible evidence presented at the hearing. If

the trial court’s findings of fact are supported by competent evidence, they are

conclusive on appeal.” In re Eckard, 144 N.C. App. 187, 197, 547 S.E.2d 835, 841,

remanded for reconsideration on other grounds, 354 N.C. 362, 556 S.E.2d 299 (2001)

(internal citation omitted).

 For purposes of appellate review, findings of fact to which no exception are

taken are binding. In re H.S.F., 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007);

see also In re E.H.P., 372 N.C. 388, 395, 831 S.E.2d 49, 54 (2019) (holding that when

 3
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

“Respondent [did] not challenge[ certain] findings, . . . they are therefore binding on

appeal”). However, “we are not at liberty to speculate as to the precise weight the

trial court gave to [erroneous findings of fact].” In re L.C., 253 N.C. App. 67, 79, 800

S.E.2d 82, 91 (2017) (internal marks and citations omitted). Further, “our inability

to determine the weight that the trial court assigned to . . . erroneous findings of

facts” may require reversal and remand when considering the trial court’s “use of

these [erroneous] findings to support the apparent conclusions of law[.]” Id. (quoting

Alvarez v. Alvarez, 134 N.C. App. 321, 327, 517 S.E.2d 420, 424 (1999)).

 B. Respondent-father’s Arguments on Appeal

1. Findings of Fact

 I agree with the Majority that, as an initial matter, the termination order does

not divide or otherwise distinguish its adjudicatory findings from its dispositional

findings. Moreover, the trial court purports to make all of its findings “based on clear,

cogent, and convincing evidence[.]”

 As the Majority notes, after examining the termination order, the trial court

arranged its findings of fact sequentially. I agree with the Majority that Findings of

Fact 1 through 8 establish the basis for the trial court’s jurisdiction in the cause and

that Findings of Fact 9 through 12 are adjudicatory in nature, addressing Petitioner’s

asserted grounds for termination under N.C.G.S. § 7B-1111(a)(1) and (a)(7). Findings

of Fact 13 through 22 are dispositional, addressing the statutory criteria in N.C.G.S.

§ 7B-1110(a)(1)-(6) as a basis for determining Jeffrey’s best interest.

 4
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 However, I disagree with the Majority’s characterization of Findings of Fact

21, 24, and 25. In its initial characterization of the findings, the Majority does not

characterize Finding of Fact 23 as a conclusion of law, which it is, but does so in its

analysis of the trial court’s disposition. Unlike the Majority’s categorization of

Finding of Fact 21 as only dispositional in nature, Finding of Fact 21 was also

adjudicatory in nature, again addressing Petitioner’s asserted grounds for

termination under N.C.G.S. § 7B-1111(a)(1) and (a)(7). Further examination of the

termination order shows the trial court relied on Finding of Fact 21 to support its

adjudication, as well as its disposition. I address Findings of Fact 23 to 25, which

actually amount to Conclusions of Law, later in my analysis.

 In addition to other challenges addressed throughout this opinion,

Respondent-father challenges the following two Findings of Fact as not supported by

clear and convincing evidence:

 21. [Respondent-father] has not shown adequate
 interest with regard to raising and supporting [Jeffrey].

 22. [Respondent-father] has not declared or shown love
 for [Jeffrey] throughout this proceeding.

He contends the hearing “transcript directly contradicts and undermines these

findings.”

 Regardless of whether the contested findings are adjudicatory or dispositional,

I agree with the Majority that there is ample evidence to support Finding of Fact 21.

 5
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

At the adjudicatory hearing,5 Petitioner testified Respondent-father had paid nothing

toward Jeffrey’s support in the preceding three years and had no contact with Jeffrey

since attending an event at a skating rink at Petitioner’s invitation in April 2016.

 Petitioner described Respondent-father’s conduct while they lived together

from 2010 to 2015 with Jeffrey as follows:

 There was a lot of domestic violence. [Respondent-father]
 had a lot of drug issues. He was always using. He was
 never really home. I cannot really say that he supported
 his child. Even though we did stay in the same house. He
 was there (inaudible). He was not a good father figure to
 his child.

While this testimony provided some evidence concerning whether Respondent-father

“neglected the juvenile” as to adjudication under N.C.G.S. § 7B-1111(a)(1), the time

period discussed in the testimony did not fall into the applicable date range to

determine whether Respondent-father “willfully abandoned the juvenile for at least

six consecutive months immediately preceding the filing of the petition or motion”

under N.C.G.S. § 7B-1111(a)(7). N.C.G.S. § 7B-1111(a)(7) (2019).

 5 As the Majority correctly states, findings made in support of an adjudication under N.C.G.S.
§ 7B-1111(a) must be based on evidence adduced at the adjudicatory stage of the proceeding. See
N.C.G.S. § 7B-1109 (2019). Dispositional findings under N.C.G.S. § 7B-1110 may be based on evidence
presented at either the adjudicatory or dispositional stage of the hearing. See In re Blackburn, 142
N.C. App. 607, 613, 543 S.E.2d 906, 910 (2001); see also In re R.B.B., 187 N.C. App. 639, 643-44, 654
S.E.2d 514, 518 (2007) (noting “a trial court may combine the N.C.G.S. § 7B-1109 adjudicatory stage
and the N.C.G.S. § 7B-1110 dispositional stage into one hearing, so long as the trial court applies the
correct evidentiary standard at each stage”).

 6
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 The trial court reviewed conflicting evidence concerning Respondent-father’s

attempts to see Jeffrey during the applicable time period before the petition in this

cause on 12 December 2016. Petitioner testified that, although the initial DVPO,

issued in 2011, provided Respondent-father with the right to visit Jeffrey,

Respondent-father did not exercise his visitation rights, and made no attempt to

contact Petitioner to see Jeffrey or to provide for his support after the second DVPO

expired on 7 July 2015. However, Respondent-father testified to attempting to

contact Petitioner through his family members to avoid conflict. Respondent-father

also testified that Petitioner’s invitations to visit with Jeffrey came with very short

notice, and that “every time [Petitioner] invited me and I could be there I was there.”

At Petitioner’s invitation, Respondent-father saw Jeffrey on three occasions after 7

July 2015: at Jeffrey’s birthday party in November 2015, during Christmas of 2015,

and at the skating rink in April 2016.

 The testimony of Petitioner evidenced that Respondent-father had not seen

Jeffrey or made any attempt to contact or provide support for the child in the eight

months that preceded her filing of the petition in this cause on 12 December 2016.

However, Respondent-father testified that, prior to the filing of that petition, he

attempted to contact Petitioner to set up a visit with Jeffrey in the months prior to

12 December 2016. Petitioner acknowledged that Respondent-father’s relatives

contacted her asking to see Jeffrey, but that they did not mention Respondent-father.

Respondent-father’s wife also attempted to contact Petitioner on Facebook, saying

 7
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

she and Respondent-father wanted to see Jeffrey, but did so after the petition was

filed.

 Respondent-father, his wife, and his aunt testified at the adjudicatory hearing

and disputed aspects of Petitioner’s testimony. Despite the dispute, “[c]redibility,

contradictions, and discrepancies in the evidence are matters to be resolved by the

trier of fact, here the trial judge, and the trier of fact may accept or reject the

testimony of any witness.” Smith v. Smith, 89 N.C. App. 232, 235, 365 S.E.2d 688,

691 (1988).

 Further, Respondent-father acknowledged both not having seen Jeffrey since

April 2016 at the skating rink and not having provided support for Jeffrey.

Respondent-father’s explanations for his inaction were at times contradicted by his

own testimony and that of his witnesses. When asked why he had never sought

custody of Jeffrey, for example, Respondent-father claimed he had no money for an

attorney “[b]ecause at the time [he] didn’t have a job.” At the hearing on 12 April

2018, Respondent-father testified that he had been employed in his current full-time

job for “[a]bout two years”—well before Petitioner filed to terminate his parental

rights on 12 December 2016. Respondent-father also claimed he had experienced

difficulty contacting Petitioner about Jeffrey because he did not know where she

lived, and because she frequently changed her phone number. He also testified that

“if I tried to get in touch with her every time I do talk to her she threatens to call the

law on me or tries to put me in jail.” He then testified that his “cousin actually stays

 8
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

two doors down from [Petitioner],” but that he didn’t “know where she lives . . .

[b]ecause . . . I ain’t never been to his house.” On cross examination, Respondent-

father’s wife subsequently described making “numerous” phone calls to Petitioner

despite her changing phone number, as follows:

 [Petitioner’s Attorney:] . . . [H]ow can you talk to
 her numerous times but you can’t reach her because her
 phone number always changes?

 [Respondent-father’s wife:] There is -- because when
 we would get the new number I would call. And no, she
 didn’t really want to talk to me but you know, (inaudible)
 and wanted to be in his children’s life -- and that -- so you
 know what, I’m going to call it. I’m going to ask to see
 [Jeffrey]. She did not particularly like the call but she was
 going to get it.

Finding of Fact 21 is based on competent evidence.

 Since I treat Finding of Fact 22 as dispositional in nature, I address Finding of

Fact 22 in my analysis of the trial court’s disposition under N.C.G.S. § 7B-1110(a).

2. Adjudication of Neglect

 Instead of conducting an analysis of the trial court’s adjudication of

abandonment under N.C.G.S. § 7B-1111(a)(7), as the Majority did, I would conduct

an analysis of Respondent-father’s neglect of Jeffrey under N.C.G.S. § 7B-1111(a)(1).

Respondent-father claims the evidence and the trial court’s findings of fact do not

support its adjudication of grounds to terminate his parental rights pursuant to

N.C.G.S. § 7B-1111(a)(1), which authorizes termination when “[t]he parent has . . .

neglected the juvenile . . . within the meaning of [N.C.]G.S. [§] 7B-101.” N.C.G.S §

 9
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

7B-1111(a)(1) (2019). N.C.G.S. § 7B-101(15) defines a neglected juvenile as “[a]ny

juvenile less than 18 years of age . . . whose parent . . . does not provide proper care,

supervision, or discipline[,] or who has been abandoned[.]” N.C.G.S. § 7B-101(15)

(2019).

 The trial court made the following findings relevant to its adjudication under

N.C.G.S. § 7B-1111(a)(1):6

 9. Petitioner has proven through clear [] and convincing
 evidence that, pursuant to [N.C.]G.S. [§ ]7B-1111(a)(1),
 [Respondent-father] has neglected [Jeffrey] in accordance
 with [N.C.]G.S. [§ ]7b-101 inasmuch as, [Respondent-
 father] has not provided any care, supervision, support, or
 discipline for [Jeffrey] since on or about [26 December
 2015.]

 11. [Respondent-father] has had no contact with [Jeffrey]
 since an [9 April 2016] birthday party at Sky-Vue
 Skateland in Rocky Mount and has not provided any form
 of support whether in cash or in kind, medical, or otherwise
 for [Jeffrey] since at least [26 December 2015].

 12. In the six consecutive months immediately preceding
 the filing of the Petition, [Respondent-father] did [not] have

 6 Respondent-father asserts that “Findings of [Fact] 18, 19, 20, 21, and 22 are . . . insufficient
to support an adjudication of abandonment,” as well as neglect. Finding of Fact 18 stated
“[Respondent-father] has a lengthy history of assaultive behavior against [Petitioner].” Finding of
Fact 19 stated “[Respondent-father] has been involved in criminal activity for the majority of [Jeffrey’s]
life and has a lengthy criminal record including current pending criminal charges.” Finding of Fact
20 stated “Both [Respondent-father] and his wife have numerous current positive references to alcohol
and drugs in their social media postings.” Findings of Fact 21 and 22 are listed above. As per my
previous analysis above, Findings of Fact 18, 19, 20, and 22 were made for dispositional purposes
under N.C.G.S. § 7B-1110(a) in assessing whether terminating Respondent-father’s parental rights is
in Jeffrey’s best interest. Therefore, I do not consider them in reviewing the court’s adjudication under
N.C.G.S. § 7B-1111(a)(1) or (a)(7). Cf. In re A.R.A., 373 N.C. 190, 195, 835 S.E.2d 417, 421 (2019)
(holding that “we limit our review of challenged findings to those that are necessary to support the
[D]istrict [C]ourt’s determination that this ground [for termination] existed”). However, Finding of
Fact 21 was made for both adjudicatory and dispositional purposes, and I consider it in reviewing the
court’s adjudication under N.C.G.S. § 7B-1111(a)(1).

 10
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 any contact or communication with [Jeffrey] nor did he
 directly attempt to contact [Jeffrey] or provide [Jeffrey] any
 care, supervision, support, discipline, gift, card, or letter;
 [Respondent-father] has not met any need of [Jeffrey] and
 has been absent from [Jeffrey’s] life since on or about [26
 December 2015].

 Respondent-father claims that Finding of Fact 9 was actually a conclusion of

law. I agree that Finding of Fact 9 is, at least partially, a conclusion of law. See In

re Helms, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (internal citations and

alterations omitted) (holding that “any determination requiring the exercise of

judgment, or the application of legal principles is more properly classified a

conclusion of law”); see also Plott v. Plott, 313 N.C. 63, 73-74, 326 S.E.2d 863, 869-70

(1985). The trial court’s classification of its own determination as a finding or

conclusion does not govern this court’s analysis on appeal. See State v. Icard, 363

N.C. 303, 308, 677 S.E.2d 822, 826 (2009); State v. Burns, 287 N.C. 102, 110, 214

S.E.2d 56, 61-62 (1975).

 However, the classification of Finding of Fact 9 as, at least partially, a

conclusion of law does not affect my review of whether clear and convincing evidence

supported the trial court’s adjudication of neglect under N.C.G.S. § 7B-1111(a)(1). To

the extent Respondent-father does not except to the trial court’s findings of fact,

specifically Findings of Fact 11 and 12, they are binding on appeal. In re H.S.F., 182

N.C. App. at 742, 645 S.E.2d at 384; see also In re E.H.P., 372 N.C. at 395, 831 S.E.2d

at 54 (holding that when “Respondent [did] not challenge[ certain] findings, . . . they

 11
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

are therefore binding on appeal.”). Findings of Fact 11 and 12 establish Respondent-

father’s lack of contact with, support of, communication with, and provision for

Jeffrey.

 Additionally, Finding of Fact 21 was supported by competent evidence, as

discussed above. Finding of Fact 21 found that “Respondent-father has not shown

adequate interest with regard to raising and supporting [Jeffrey].”

 Based on its findings of fact, the trial court reached the following conclusions

of law:

 2. [Respondent-father], through testimony and evidence
 presented at this proceeding, is determined to have
 neglected [Jeffrey] within the meaning of N.C.G.S. § 7B-
 101(b) and pursuant to N.C.G.S. § 7B-1111(a)(1).

 ...

 5. There is sufficient, clear [] and convincing evidence to
 terminate the parental rights of [Respondent-father] to
 [Jeffrey] pursuant to N.C.G.S. §7B-1111.

 Findings of Fact 11 and 12 are binding on appeal, and Finding of Fact 21 is

supported by competent evidence. Findings of Fact 11, 12, and 21 support the trial

court’s Conclusions of Law 2 and 5. The trial court’s adjudication under N.C.G.S. §

7B-1111(a)(1) that Respondent-father neglected Jeffrey, and that Respondent-

father’s parental rights to Jeffrey should be terminated, was supported by clear and

convincing evidence.

3. Adjudication of Abandonment

 12
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 Respondent-father claims the evidence and the trial court’s findings of fact do

not support its adjudication of grounds to terminate his parental rights pursuant to

N.C.G.S. § 7B-1111(a)(7), which authorizes termination when “[t]he parent has

willfully abandoned the juvenile for at least six consecutive months immediately

preceding the filing of the petition.” N.C.G.S § 7B-1111(a)(7) (2019). However,

because I would affirm the trial court’s adjudication under N.C.G.S. § 7B-1111(a)(1),

there is no need to review the second ground for termination found by the trial court,

and affirmed by the Majority, under N.C.G.S. § 7B-1111(a)(7). In re E.H.P., 372 N.C.

at 395, 831 S.E.2d at 53-54.

4. Disposition

 Respondent-father also claims the trial court abused its discretion at the

dispositional stage of the proceeding by concluding that termination of his parental

rights is in Jeffrey’s best interest. “A ruling committed to a trial court’s discretion is

to be accorded great deference and will be upset only upon a showing that it was so

arbitrary that it could not have been the result of a reasoned decision.” White v.

White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).

 “Once a trial court has concluded during the adjudication phase that grounds

exist for termination of parental rights, it must decide in the disposition phase

whether termination is in the best interests of the child.” In re D.R.F., 204 N.C. App.

138, 141, 693 S.E.2d 235, 238 (2010). Under N.C.G.S. § 7B-1110(a),

 13
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 [t]he court may consider any evidence, including hearsay
 evidence as defined in [N.C.]G.S. [§] 8C-1, Rule 801, that
 the court finds to be relevant, reliable, and necessary to
 determine the best interests of the juvenile. In each case,
 the court shall consider the following criteria and make
 written findings regarding the following that are relevant:

 (1) The age of the juvenile.

 (2) The likelihood of adoption of the juvenile.

 (3) Whether the termination of parental rights will
 aid in the accomplishment of the permanent plan for
 the juvenile.

 (4) The bond between the juvenile and the parent.

 (5) The quality of the relationship between the
 juvenile and the proposed adoptive parent,
 guardian, custodian, or other permanent placement.

 (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2019); see also In re D.R.F., 204 N.C. App. at 141-42, 693

S.E.2d at 238-39. While the statute seems to require findings concerning the relevant

six listed factors, we have read the statute differently in past decisions. According to

these decisions, although a court must consider each of these factors, written findings

are required only “if there is ‘conflicting evidence concerning’ the factor, such that it

is ‘placed in issue by virtue of the evidence presented before the trial court[.]’” In re

H.D., 239 N.C. App. 318, 327, 768 S.E.2d 860, 866 (2015) (quoting In re D.H., 232

N.C. App. 217, 222 n.3, 753 S.E.2d 732, 735 n.3 (2014)).

 14
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 I do not share the Majority’s confidence that the trial court’s ruling did not

constitute an abuse of discretion. Even under our past reading of the statutory

requirements, it appears the trial court did not make the necessary findings and

abused its discretion in this matter—Finding of Fact 22 is unsupported by the

evidence, and the findings are deficient under N.C.G.S. § 7B-1110(a)(1)-(6).

 The trial court made the following findings of fact under N.C.G.S. § 7B-

1110(a)(1)-(6):

 13. [Jeffrey] is seven (7) years old . . . .

 14. The likelihood that [Jeffrey] will be adopted is good;
 Petitioner’s husband’s testimony indicates his desire to
 adopt [Jeffrey] and [Jeffrey] indicated that he wished to be
 adopted by Petitioner’s husband.

 15. That the termination of parental rights will aid in the
 accomplishment of the permanent plan for [Jeffrey]; the
 adoption of [Jeffrey] by Petitioner’s husband will provide
 needed emotional and financial stability and ensure
 [Jeffrey’s] continued positive growth and development that
 has been fostered in [Jeffrey’s] current home setting with
 Petitioner and her husband.

 16. That the bond between [Jeffrey] and [Respondent-
 father]is poor, with [Jeffrey] having very little recollection
 of [Respondent-father].

 17. The quality of the relationship between [Jeffrey] and
 the proposed adoptive parent is good; [Jeffrey] and the
 proposed adoptive parent have a strong familial bond,
 enjoy similar activities, and spend a great deal of time
 together; the proposed adoptive parent has provided
 [Jeffrey] with continued emotional and financial support in
 a parental role over approximately the last two (2) years.

 15
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 18. [Respondent-father] has a lengthy history of assaultive
 behavior against [Petitioner].

 19. [Respondent-father] has been involved in criminal
 activity for the majority of [Jeffrey’s] life and has a lengthy
 criminal record including current pending criminal
 charges.

 20. Both [Respondent-father] and his wife have numerous
 current positive references to alcohol and drugs in their
 social media postings.

 21. [Respondent-father] has not shown adequate interest
 with regard to raising and supporting [Jeffrey].

 22. [Respondent-father] has not declared or shown love for
 [Jeffrey] throughout this proceeding.

 23. It is in the best interest of [Jeffrey] that the parental
 rights of [Respondent-father] for [Jeffrey] be terminated
 based on the foregoing findings of fact.

 24. It is in the best interest of [Jeffrey] that the parental
 rights of [Respondent-father] for [Jeffrey] be terminated as
 Petitioner’s husband has a current, loving, fatherly bond
 with [Jeffrey] whom he wishes to adopt.

 25. It is in the best interest of [Jeffrey] that the parental
 rights of [Respondent-father] for [Jeffrey] be terminated as
 [Jeffrey] deserves the opportunity to have a normal life and
 an opportunity for someone else to father him and to stand
 in for [Respondent-father], who has exhibited inadequate
 interest in participating in the life of or the support of
 [Jeffrey].

(Emphasis added).

 The trial court also included Conclusion of Law 6 concerning Jeffrey’s best

interest:

 16
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 6. It is in the best interest of [Jeffrey] that the parental
 rights of [Respondent-father] be terminated, and that
 [Jeffrey’s] custody remain exclusively with the Petitioner.

 Findings of Fact 13 to 22, though inadequately, track with the required

findings under N.C.G.S. § 7B-1110(a)(1)-(6).

 I agree with the Majority that Finding of Fact 23 is actually a conclusion of

law, but would also include Findings of Fact 24 and 25 in that category. Findings of

Fact 23 through 25, each of which begin “It is in the best interest of [Jeffrey] that the

parental rights of [Respondent-father] for [Jeffrey] . . . be terminated . . .” actually

amount to conclusions of law, inasmuch as they declare Petitioner’s success in

establishing the statutory ground for termination in N.C.G.S. § 7B-1111(a)(1) or (a)(7)

under the applicable burden of proof in N.C.G.S. § 7B-1109(f). See In re Helms, 127

N.C. App. at 510, 491 S.E.2d at 675 (internal citations and alterations omitted)

(holding that “any determination requiring the exercise of judgment, or the

application of legal principles is more properly classified a conclusion of law”); see also

In re S.Z.H., 247 N.C. App. 254, 261-62, 785 S.E.2d 341, 347 (2016) (characterizing

finding of fact under (a)(7) as a conclusion of law). The trial court’s classification of

its own determination as a finding or conclusion does not govern our analysis. See

State v. Icard, 363 N.C. at 308, 677 S.E.2d at 826; State v. Burns, 287 N.C. at 110,

214 S.E.2d at 61-62. In addition to Finding of Fact 23, I would treat Findings of Fact

24 and 25 as conclusions of law and apply the appropriate de novo standard of review.

See Icard, 363 N.C. at 308, 677 S.E.2d at 826 (“While we give appropriate deference

 17
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

to the portions of [the relevant findings] that are findings of fact, we review de novo

the portions of those findings that are conclusions of law.”).

 a. Impact of Erroneous Finding of Fact 22

 Respondent-father challenges Finding of Fact 22, which states he “has not

declared or shown love for [Jeffrey] throughout this proceeding.” I agree with the

Majority that the term “this proceeding” in Finding of Fact 22 referenced the entire

period since Petitioner filed her petition on 12 December 2016, but I would also

construe “this proceeding” to include the six-month period prior to the filing of the

petition examined under N.C.G.S § 7B-1111(a)(7). I examine whether the trial court

was presented with evidence that Respondent-father declared or demonstrated his

love for Jeffrey.

 The hearing transcript shows Respondent-father expressly testified that he

loved his son, Jeffrey. Respondent-father testified as follows:

 [Respondent-father’s Attorney:] But you wanted to see
 your son more?

 [Respondent-father:] Yeah. I wanted to see my
 son.

 ...

 [Respondent-father’s Attorney:] Now are you bonded? Are
 you close? Does he seem
 to have a bond?

 [Respondent-father:] Yes, sir. I love my son.

 18
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

(Emphasis added). The trial court was presented with Respondent-father’s express

testimony that he loved Jeffrey, and that he wanted to see Jeffrey more, during the

proceeding referred to in Finding of Fact 22.

 Further, Petitioner admitted that she knew Respondent-father wanted to

spend time with Jeffrey. In her testimony, Petitioner admitted that Respondent-

father’s wife sent her a message that “[Respondent-father] . . . would really like to see

[Jeffrey.]” This message came after Petitioner filed her petition. In light of

Petitioner’s admission that she received a message that Respondent-father wanted to

spend time with Jeffrey, the trial court was presented with evidence that Respondent-

father demonstrated his love for Jeffrey during this proceeding.

 The trial court’s Finding of Fact 22 is erroneous in light of testimony from

Respondent-father and Petitioner. “A district court . . . necessarily abuse[s] its

discretion if it based its ruling on an erroneous view of the law or on a clearly

erroneous assessment of the evidence.” Cooter & Gell v. Hartmarx Corp., 496 U.S.

384, 405, 110 L. Ed. 2d 359, 382 (1990). I agree with Respondent-father that Finding

of Fact 22 was clearly erroneous, as the trial court was presented with evidence that

Respondent-father declared and showed love for Jeffrey during the proceeding.

Finding of Fact 22 failed to account for Respondent-father’s testimony that he loves

Jeffrey, or Petitioner’s testimony that she was aware Respondent-father wanted to

spend time with Jeffrey. Finding of Fact 22 not only lacks evidentiary support, but

rather is overtly false.

 19
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 In light of Respondent-father’s express testimony that he loved Jeffrey, made

before the trial court, Finding of Fact 22 constitutes arbitrariness to the point of an

abuse of discretion. See White, 312 N.C. at 777, 324 S.E.2d at 833. I would not merely

disregard Finding of Fact 22, as the Majority does in reviewing the trial court’s

disposition. Instead, I would consider an overtly false finding, which characterized

Respondent-father as failing to state or show love to Jeffrey when the evidence

established the contrary, as a clear example of arbitrariness. I am concerned that

the trial court’s erroneous Finding of Fact 22 affected the reasoning underlying its

conclusions of law in Findings of Fact 23 to 25 and Conclusion of Law 6—that

termination of Respondent-father’s parental rights was in Jeffrey’s best interest. The

trial court based its Findings of Fact 23 to 25 and Conclusion of Law 6 on dispositional

Findings of Fact 13 to 22 tracking the required findings under N.C.G.S. § 7B-

1110(a)(1)-(6). The required dispositional findings under N.C.G.S. § 7B-1110(a)(1)-

(6) included the erroneous Finding of Fact 22 that “[Respondent-father] has not

declared or shown love for [Jeffrey] throughout this proceeding.” The trial court

based its decision that terminating Respondent-father’s parental rights was in

Jeffrey’s best interest, at least in part, “on a clearly erroneous assessment of the

evidence,” which constitutes an abuse of discretion. Cooter & Gell, 496 U.S. at 405,

110 L. Ed. 2d at 382.

 b. Deficient Dispositional Findings—Finding of Fact 15

 20
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

 Respondent-father does not dispute the evidentiary support for Findings of

Fact 13-20, which address each of the factors in N.C.G.S. § 7B-1110(a), at least in

part. However, he contends a portion of Finding of Fact 15 is erroneous because it

refers to Jeffrey’s “permanent plan”—a feature only of proceedings initiated by a

county director of social services under Article 4 of Chapter 7B. See N.C.G.S. §§ 7B-

404.1, -906.1, -906.2 (2019). I agree that Jeffrey has no “permanent plan” as that

term is considered in N.C.G.S. §§ 7B-404.1, 906.1, and 906.2. The trial court

acknowledged “read[ing] the petition” filed by Petitioner at the outset of the trial. As

the Majority mentions, and I also discussed above, Finding of Fact 15 was part of the

trial court’s order that followed the required findings in N.C.G.S. § 7B-1110(a)—

specifically, N.C.G.S. § 7B-1110(a)(3). While the Majority categorizes the reference

to a permanent plan as an oversight, the trial court’s erroneous finding concerning a

permanent plan that did not exist constituted a misapprehension of the law and was

an abuse of discretion. See, e.g., Wilson v. McLeod Oil Co., 327 N.C. 491, 523, 398

S.E.2d 586, 603 (1990). “A trial court by definition abuses its discretion when it

makes an error of law.” In re A.F., 231 N.C. App. 348, 352, 752 S.E.2d 245, 248 (2013).

When a “judge below has ruled upon [a] matter before him upon a misapprehension

of the law, the cause will be remanded . . . for further hearing in the true legal light.”

State v. Grundler, 249 N.C. 399, 402, 106 S.E.2d 488, 490 (1959). The trial court’s

consideration of this case as one involving a permanent plan, when Petitioner

initiated the proceeding and no permanent plan existed, meant the trial court did not

 21
 IN RE J.T.C.

 Murphy, J., concurring in the result in part and dissenting in part

consider the case in its true legal light. Id. I would remand for another hearing

where this case is considered in its true legal light. Id.

 CONCLUSION

 The trial court based its disposition on two erroneous findings—Findings of

Fact 22 and 15. Finding of Fact 22 found that Respondent-father did not declare or

show love to Jeffrey throughout this proceeding, which was clearly erroneous in light

of testimonial evidence. Finding of Fact 15, which tracked N.C.G.S. § 7B-1110(a)(3),

found that a permanent plan existed even though Petitioner initiated the

proceedings, which was a misapprehension of law. The trial court’s erroneous finding

and misapprehension of law constituted an abuse of discretion in concluding Jeffrey’s

best interest will be served by termination of Respondent-father’s parental rights.

Accordingly, we should vacate the trial court’s order and remand for further

dispositional proceedings not inconsistent with this holding. I respectfully dissent.

 22